## JOSEPH WEBER *vs.* THE STATE OF MARYLAND.

*State Licenses: Clerk of the Court of Common Pleas; billiard tables; municipal license no defence; Ch. 525 of the Acts of 1892; Code of Pub. Gen. Laws, Art. 56, sec. 8; Code of Pub. Local Laws, Art. 4, sec. 658. Conflict of law; general and local law. Criminal law: indictment under statute; words of exception; matter of defence.*

Although the law regulating licenses on billiard tables, as amended by the Act of 1892, Chapter 525 (section 8 of Article 56 of the Code of Public General Laws, 1904), was by Chapter 123 of the Acts of 1898, codified in the Public Local Laws for Baltimore City, the city is not thereby authorized to issue the license or to receive the revenue thence produced.                                                                p. 408

The requirement for the license exists as a result of a direct, and not of a delegated exercise of sovereignty, and the State has not relinquished the benefit of the revenue.          p. 409

The license required by section 658 of Article 4 of the Code of Public Local Laws is to be issued by the State and not by the City of Baltimore. p. 409

The license is to be issued by the Clerk of the Court of Common Pleas. p. 409

An indictment charging a failure to obtain a license to keep a billiard table in Baltimore City according to the form of the act in such a case made and provided, is not demurrable on the ground that it describes the license as being issuable by the State, and the possession of a municipal license is no defence. p. 409

These sections dealing with the subject in both the general code and the local code were originally and simultaneously derived, in identical terms, from the same statute; the legislature did not intend to duplicate the licenses. p. 410

The principle that where the Public General Laws and the Public Local Laws in any county, city, town or district are in conflict the public local laws shall prevail, does not apply. p. 410

Where, in a criminal statute, after general words of prohibition, an exception is created in a subsequent clause or section, it must be interposed by the accused in an indictment thereunder as a matter of defence, and it is not necessary that the indictment should negative the exception by express averments. p. 410

*Decided June 24th, 1911.*

Appeal from the Criminal Court of Baltimore City (DUFFY, J.).

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, and STOCKBRIDGE, JJ.

*Clarence W. Perkins,* for the appellant.

*Charles Morris Howard* (with whom were *Isaac Lobe Straus, the Attorney-General,* and *A. S. J. Owens,* on the brief), for the appellees.

URNER, J., delivered the opinion of the Court.

The appellant was convicted in the Criminal Court of Baltimore City upon the following indictment: "The jurors of the State of Maryland, for the body of the City of Baltimore, do on their oath present, that Joseph Weber, late of said city, on the 3rd day of May, in the year of our Lord nineteen hundred and ten, at the city aforesaid, unlawfully did then and there keep and exhibit for use four billiard tables without first obtaining from the said State a license for the keeping and exhibiting for use then and there of the said four billiard tables, contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State."

A demurrer to the indictment was interposed and overruled. At the trial the traverser offered to prove that he holds a city license issued under an ordinance of the municipality. The action of the Court below in excluding this evidence forms the subject of the only bill of exceptions in the record. This exception and demurrer are intended to present the same question. They are both predicated upon the theory that the indictment charges a violation of certain sections of the Code of Public General Laws relating to licenses for the keeping of billiard tables; that these provisions are inoperative so far as Baltimore City is concerned by reason of the existence of local legislation on the subject, and that there is no State license required within the city for this purpose.

The present general law relating to such licenses is embraced in sections 8, 9 and 10 of Article 56 of the Code of Public General Laws of 1904, while the local law in question is contained in sections 658, 659 and 660 of Article 4 of the Code of Public Local Laws, title "Baltimore City." It is provided by section 8 of Article 56 of the General Code that:

"*A license may be granted to any person who may apply for permission to keep a billiard table, for which license there shall be paid the sum of fifty dollars, and for every additional*

*billiard table kept by the same person he shall pay a license of
twenty-five dollars; provided, that all said additional tables
shall be kept in the same apartment,* and the word billiard
table shall be construed to include pool tables; and provided
further, that any person who shall keep a pool or billiard table
where a charge is made for playing on the same, but the said
charge is returned or is to be returned to the players to be
exchanged with the owner of said table or his agent for money,
drinks, cigars or any other articles of merchandise shall be con-
sidered as gambling, and such tables shall be deemed gaming
tables for the purposes of this article, and the person so keeping
such table shall be liable to the penalty or penalties prescribed
by the Public General Laws for keeping a gaming table or
other place of gaming or permitting gambling on his or her
premises."

Section 658 of Article 4 of the Code of Public Local Laws
is identical with the portion of the general law which we have
italicized. The local law has none of the other provisions of
the sections above quoted, but includes a proviso, which the
general law does not contain, that "this section shall not
apply to any billiard table kept for private use."

The terms of section 9 of Article 56 of the General Code
tand 659 of Article 4 of the Local Code are exactly the same
and in the following language:

"Any person keeping or exhibiting for use a billiard table
or tables without first obtaining a license therefor shall, for
each and every table so kept or exhibited, forfeit and pay the
sum of five hundred dollars, one-half to the informer and the
other half to the State."

Sections 10 of Article 56 and 660 of Article 4 of the
respective codes are alike in providing that "Nothing con-
tained in the two preceding sections shall impair the right
of the Mayor and City Council of Baltimore to impose a
further tax on billiard tables"; but the former law also pre-
served this right to other municipalities.

In the Codes of 1888 (P. G. L. Art. 56, secs. 8-10; P. L.
L., Art. 4, secs. 641-643) the general and local provisions
dealing with billiard table licenses were precisely similar
and were the same as those now existing in sections 658-660
of Article 4 of the Local Code, except that the general law
included other municipal corporations in the saving clause
contained in the last section. The general law was amended
into the form it now presents in the code by Chapter 525
of the Acts of 1892, while the local law was re-enacted by
Chapter 123 of the Acts of 1898, which revised the Charter
of Baltimore City and recodified the miscellaneous statutes
relating to that locality.

Prior to the adoption of the Codes of 1888 there was no
local legislation on this subject, except the Act of 1826,
Chapter 219, to which we will presently refer, and those codi-
fications adopted without change the provisions of sections 6,
7 and 8 or Article 56 of the Code of Public General Laws
of 1860 as amended by the Acts of 1865, Chapter 56, and
1870, Chapter 250. The details of these intermediate amend-
ments need not be stated. The provisions of the Code of
1860 were based upon the Acts of 1798, Chapter 113, by
which such licenses were originally imposed, as modified by
the Acts of 1824, Chapter 64, and 1826, Chapter 219.

The Act of 1798 authorized the County Clerk to issue the
license and directed the proceeds to be applied to county
uses. The cities of Annapolis, Georgetown, Baltimore and
"the precincts of Baltimore" were excepted from the opera-
tion of this statute. In the Act of 1824 there was no such
exception, but there was a saving clause in favor of the right
of the corporations of Baltimore, Annapolis, Frederick and
the commissioners of the town of Easton or of any other
incorporated town to impose a further tax upon billiard
tables. This act increased the license from fifty dollars to
one hundred dollars, and directed that the money realized
from this source be paid by the clerk to the treasurers, respec-
tively, of the Western and Eastern Shores. At this period
Baltimore City formed part of the territory of Baltimore

county, but a City Court having been created by the Act of
1816, Chapter 193, provision was made that "the requisi-
tions of the Act of December Session, 1824, Chapter 64, as
they relate to the granting of licenses for permission to keep
billiard tables in the said city, shall be and the same are
hereby transferred to the City Court of Baltimore, and that
the clerk of the said City Court shall be and he is hereby
empowered and authorized to grant a license to such person
or persons as may apply for permission to keep a billiard
table, for which license there shall be paid the sum of one
hundred dollars for the use of the State, and one dollar to the
said clerk for his own use."  Acts of 1826, Chapter 219.

In each of the acts mentioned there was a fine prescribed
for the keeping of billiard tables without licenses.  In the
Act of 1798 the amount was one hundred and fifty dollars,
one-half to be paid to the informer and the other half to the
county; while in the Acts of 1824 and 1826 the amount was
increased to five hundred dollars, of which one-half was to
go to the informer and one-half to the State.

The references we have made to the history of the legisla-
tion involved in the present controversy will be useful as
reflecting upon the question we are now to detrmine.

The indictment charges a failure to obtain a license from
the State.  It is hence argued on behalf of the appellant that
this accusation is necessarily predicated on the general stat-
ute, and that it cannot be supported under the local law,
which, it is contended, contemplates the issuance of licenses
by the City of Baltimore.  It is only upon this theory that
the question as to whether the general law is operative in
Baltimore City becomes important.  If both are intended to
provide for licensing by the State, the conduct charged in the
indictment is "contrary to the form of the Act of Assembly"
under the local, even though not under the general, statute.
It is apparent, therefore, that the primary and perhaps the
sole and controlling inquiry is whether the provisions we
have quoted from the Local Code, under the title "Baltimore

City," have lost the essential purpose of their original enact-
ment by reason of their incorporation in that body of laws.

In all of the legislation from which the code provisions in
regard to these licenses were derived it is perfectly clear that
they were intended to be issued by and for the benefit of the
State. Except for the codification of the laws there could be
no possible ground for the suggestion that such licenses when
issued within the limits of the city should be treated as being
granted by the municipality. The Act of 1898 did not make
these provisions a part of the Charter of Baltimore City. In
fact, they are kept separate and distinct in that act from the
legislation, under the sub-division entitled "Charter," which
operates as a grant of municipal powers. They retain at the
present time the place they were given in the Local Code of
1888 as a part of the miscellaneous laws relating to this
governmental division of the State. If, therefore, the city
is now entitled to issue the licenses thus prescribed and to
receive the revenue they produce, it is not because the author-
ity for that purpose has been expressly delegated by the legis-
lature, but merely because the statute providing for the
licenses, as an exercise of the State's prerogative, has been
codified both as a local law for Baltimore City and as a gen-
eral law for the State at large. We can have no hesitation
in holding that the codification has not had such an effect.

There is nothing whatever in the terms of the act itself
to indicate a legislative intent to exempt the keepers of
billiard tables in Baltimore City from the necessity of obtain-
ing a State license, but the contrary design is clearly appar-
ent from the whole course of the legislation we have dis-
cussed, as well as from certain significant features of the
existing law. The fines recovered for the violation of the
act are directed to be divided equally between the informer
and the *State.* If the purpose of the codification had been to
vest in the city the right to grant the specified licenses and to
collect the prescribed fees, it is not to be supposed that the
State would have denied to the municipality any interest in
the fines enacted from those in default. There is, moreover,

in the act a distinct legislative recognition of the pre-existing right of the city to impose such a tax; and it would consequently have been superfluous to provide by statute a license which might have been just as effectually imposed by ordinance. But the consideration we regard as the most conclusive is that the requirement for the license exists as the result of a direct, and not of a delegated, exercise of sovereignty, and that the State had indicated no intention to relinquish the benefits to its treasury ordinarily produced by such an exertion of its authority.

While the sections we have quoted from the Baltimore City article of the Local Code do not designate the agency through which billiard table licenses are to be issued, it is elsewhere in the same Code (Art. 4, sec. 363) expressly provided that the Clerk of the Court of Common Pleas in Baltimore City shall perform the same duties as are imposed upon the clerks of the Circuit Courts of the counties by sections 57-62 (now 61-66) of Article 17 of the Code of Public General Laws with respect to "the obtaining of blank licenses, granting the same and returning an account thereof to the Comptroller." There is also a constitutional provision (Art. IV, sec. 38), that "The Clerk of the Court of Common Pleas shall have authority to issue within said city all marriage and other licenses required by law, subject to such provisions as are now or may be prescribed by law."

We accordingly hold that the license required by section 658 of Article 4 of the Local Code, as enacted by Chapter 123 of the Acts of 1898, is contemplated to be issued by the State and not by the City of Baltimore. The conclusion follows that an indictment charging a failure to obtain a license to keep a billiard table in that city "contrary to the form of the Act of Assembly in such case made and provided," is not demurrable on the ground that it describes the license as being issuable by the State, and that to such a charge the possession of a municipal license is no defence.

In disposing of the question we have thus far had under consideration, we have not found it necessary to apply the

rule that "Where the public general law and the public local law of any county, city, town or district are in conflict, the public local law shall prevail." *Code P. G. L.* Art. 1, sec. 12; *Cooper* v. *Holmes,* 71 Md. 20; *Prince George's County* v. *Laurel,* 51 Md. 457; *Alexander* v. *Baltimore,* 53 Md. 100. As the sections dealing with the subject in both the general and the local codes were originally and simultaneously derived, in identical terms, from the same statute, which provided a single licensing system, it is obvious that the legislature did not intend to duplicate the licenses, and there can be no doubt that the local requirement for their issuance has exclusive operation within the limits of the city. Whether the provisions added to the general law by the Act of 1892 are effective in Baltimore City is a question, raised in the argument, which we do not find it necessary to now decide. But there is a clause which is now peculiar to the local law, though formerly included in both codes, to which our attention must be directed. It is suggested that the proviso to the effect that no license shall be required for billiard tables which are kept for private use creates an exception which should have been negatived in the indictment. The settled rule, under repeated decisions of this Court, is "that where, after general words of prohibition, an exception is created in a subsequent clause or section, it must be interposed by the accused as a matter of defence," and it is not necessary in such case that the indictment should negative the exception by express averment. *Parker* v. *State,* 99 Md. 201; *Kiefer* v. *State,* 87 Md. 567; *Stearns* v. *State,* 81 Md. 341. In *Kiefer* v. *State* there was an indictment under an act prohibiting the sale of intoxicating liquors by a licensee on Sunday "except that if the licensee is a hotel keeper he may supply such liquors to be drunk in their rooms or with their meals to *bona fide* guests." It was held that the exception should have been negatived, but it was said by the Court: "This section has a proviso with reference to the hours during which sales can be made, which is clearly a matter of defence, and it would not be necessary to negative it in an indictment

for the violation of that part of the law. If the legislature had intended this exception to only have that effect, it is but reasonable to suppose it would also have been placed in the proviso and not in the very heart of the law."

In the present case, the clause exempting those keeping billiard tables for private use from the necessity of obtaining a license is contained in a clause, formulated as a proviso, which is separate and distinct from the provision requiring the license, and under the rule we have quoted we can have no difficulty in holding that it was not necessary to negative in the indictment the ground of exemption thus specified.

We concur in the rulings of the learned Court below and its judgment will be affirmed.

*Judgment affirmed, with costs.*