WILLIAM NOLAN *v.* STATE OF MARYLAND.
[No. 58, January Term, 1929.]

*Decided May 22nd, 1929.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Abram C. Joseph,* with whom was *Daniel C. Joseph* on the brief, for the appellant.

*J. Hubner Rice, Assistant Attorney General,* with whom were *Thomas H. Robinson, Attorney General,* and *Herbert R. O'Conor, State's Attorney for Baltimore City,* on the brief, for the State.

PATTISON, J., delivered the opinion of the Court.

The appellant, William Nolan, was indicted, tried, and convicted in the Criminal Court of Baltimore City, for hav-

ing violated the provisions of section 247 of article 27 of the Code of Public General Laws of Maryland, which section is as follows:

"It shall not be lawful for any person * * * to bet, wage or gamble in any manner, or by any means, or to make or sell a book or pool on the result of any * * * running race of horses * * * or to establish, keep, rent, use or occupy or knowingly suffer to be used, kept or rented or occupied, any house, building, vessel, grounds or place or portion of any house, building, vessel, grounds or place, on land or water, within the State of Maryland, for the purpose of betting, wagering or gambling in any manner, or by any means, or making, selling or buying books or pools therein or thereon upon the result of any race or contest or contingency, or by any means or devices whatsoever, to receive, become the depository of, record or register, or forward or purpose, or agree or pretend to forward any money, bet, wager, thing or consideration of value, to be bet, gambled or wagered in any manner, or by any means or device whatsoever, upon the result of any race, contest or contingency."

The indictment contained a number of counts, covering each and all of the offenses embraced in that section.

A demurrer was filed to the indictment, the ground of which, as we gather from the briefs of counsel, was that the section referred to, under which the appellant was tried and convicted, had, before the trial of the case, been repealed and was no longer in force. This section of the Code, with four succeeding sections (sections 248 to 251, inclusive), was enacted by chapter 285 of the Acts of 1898.

Section 248 made it lawful in any county of this state, though not in Baltimore City, for any person to bet on a race of horses within the grounds of any agricultural association licensed by the circuit court for the county in which the ground or tract was located. Sections 249 and 250 provided how the application for the license should be made, what it should contain, and what should be done by the applicant and the court before the license should issue. Section 251 pro-

vided what the license should contain, the number of days in each year for which it should be issued, and the cost of such license, and to whom the license fee should be paid.

In *Agricultural Society of Montgomery County v. State,* 130 Md. 474, the defendant was charged (1) with unlawfully and knowingly suffering its grounds to be used for making, selling, and buying books and pools thereon upon the result of a running race of horses held on said grounds, and (2) with not having the required license permitting its grounds to be used for such purpose. There the contention was that the four last named sections of chapter 285 of the Acts of 1898 were unconstitutional and void, in that the provisions therein contained imposed upon the court a non-judicial duty, as a result of which section 247 would fall with them. The court did not pass upon the question of the validity of these sections, as it held that section 247 was independent of them and was good even though the subsequent sections thereto should be held void. *Storck v. Baltimore City,* 101 Md. 476; *Connolly v. Union Sewer Pipe Co.,* 184 U. S. 540. And in connection therewith, speaking through Judge Constable, the court said "if * * * it should be held that the duty imposed upon the courts is a non-judicial duty, and, therefore, void, nevertheless we are of the opinion that the prohibitory portion of the act still remains in force and a verdict of guilty as charged in the first count would be correct."

In *Close v. Southern Md. Agricultural Assn.,* 134 Md. 635, where the question was again raised as to the validity of the four sections, Judge Boyd held that the duties imposed upon the court by those sections were not within the ordinary power of the circuit court and were void, and he then repeated what Judge Constable had said in the former case, that section 247 would stand, although the four following sections were invalid.

After the decision in *Close v. Southern Md. Agricultural Assn., supra,* handed down in 1919, the Legislature, the following year, passed the Act of 1920, ch. 273, known as article 78-B of the Code of 1924. This act created a commission, known as the "Maryland Racing Commission," which was

thereby authorized to issue licenses to "any person or persons, association or corporation desiring to conduct racing within the State of Maryland," who had complied with the provisions of the act, and was passed in substitution for the four last sections of chapter 285 of the Acts of 1898 (Sections 248 to 251, inclusive, of the Code of 1924), as those sections, authorizing the court to issue such licenses, had been declared unconstitutional. It is true that it goes more into detail as to matters of regulation, but, with the exception of creating a commission, it is no more comprehensive in its scope than the sections for which it was substituted, and it is clear, we think, that it was not the intention of the Legislature in its passage to repeal section 247 of article 27 of the Code. It was passed simply to supply the want or omission in the statute resulting from the court's decision last referred to. The object and purpose of the enactment of 1920 was to create, in substitution for the court, a board or body authorized to issue the licenses mentioned in the act, and to supervise and regulate the licensees in their management and conduct of the races, and to permit betting thereat, under the conditions imposed. That this was the intention of the Legislature is shown by the act itself, in which it is said, in section 10, that the license issued thereunder "shall be for all purposes in substitution for any license now required by law and especially the license referred to in section 124-B of chapter 285 of the Acts of 1898, and all amendments thereto, said section being codified as section 248 of article 27, the Annotated Code of Maryland, title "Crimes and Punishments," sub-title "Gambling." Section 247 of article 27, in our opinion, was not repealed by article 78-B, but is still in force.

Nor do we find the indictment invalid because of the further reason urged against it that it failed in its various counts to negative the exceptions created by the act of 1920 (article 78-B of the Code of Public General Laws). This objection was fully answered in *Stearns v. State,* 81 Md. 341, where the very same question was raised and decided against the defendant on a demurrer to an indictment framed

under the Act of 1894, ch. 232, now, with unimportant amendments, section 247 of article 27 of the Code of 1924. *Kiefer v. State,* 87 Md. 562; *State v. Knowles,* 90 Md. 646; *Watson v. State,* 105 Md. 650; *Weber v. State,* 116 Md. 402; *State v. Jenkins,* 124 Md. 376; *Howes v. State,* 141 Md. 532; *Foxwell v. State,* 146 Md. 90.

The court, in our opinion, was right in overruling the demurrer to the indictment.

Thereafter the defendant petitioned the court, asking for the return of "certain private effects of the petitioner, including certain papers, memoranda and telephone instruments," which had been seized by two members of the police force at the residence of the defendant at the time of his arrest, alleging therein that it was the object and purpose of the State to use the same as evidence against the defendant in the trial of the case. The petition was answered and testimony was taken upon the petition and answer. Whereupon the court dismissed the petition. The evident object and purpose of the petitioner in asking for the return of the articles mentioned was to prevent them from being offered in evidence against him, it being his contention that such articles and paraphernalia were not admissible in evidence because of the manner of their obtention. This question will be considered and disposed of in passing upon the court's action in admitting them in evidence at the trial of the case.

The evidence discloses that Sergeant Koch of the Baltimore City police force, on March 15th, 1928, in company with Officer Spruill, went near the home of the defendant on Cedardale Road and there parked their car. While there, they saw Nolan go in his house. The sergeant with the officer went to the house, rang the bell, and Mrs. Nolan came to the door. He told Mrs. Nolan they were police officers and wanted to see Mr. Nolan. She said he was not in. She was then told by the sergeant that he had seen him go in the house a couple of minutes before, and she said "I have been to the mail box and he may have come in. I will go up stairs and see if he is up there." She went up stairs and they went with her, and there, as stated by Sergeant Koch, the

only witness who testified, they found Nolan at the 'phone taking bets. As he entered the room he heard a bet of twenty-five dollars placed on the horse "Right on Time," and Nolan wrote the bet on a paper before him upon the table at which he was seated. This paper Koch at once took possession of, and upon it were found written by Nolan these words: "Thursday, March 15, $25.00, first, 'Right on time.'" Upon cross-examination Koch was asked if he got on the 'phone at all. He answered "I did. Q. During the time you were at the 'phone did you receive any bets at all? A. A couple of bets were called in and no more than he recognized my voice he hung up and said 'I will call you later.'"

In addition to the paper mentioned above, they found other papers upon which were figures, writing and "hierogliphics" that were more or less meaningless to those unfamiliar with book making. There was also found three 'phones on the second floor, in addition to the one on the first floor. The defendant was then and there arrested and the papers and paraphernalia mentioned, including the three telephones on the second floor, were seized by the officer, and, at the trial of the case, were offered and admitted in evidence against the defendant. When so admitted, Sergeant Koch was permitted to explain or interpret the meaning of the writing, figures, etc., appearing thereon, though he was not permitted to so testify until he had first stated that he for seven years had been working almost exclusively on book-making cases and had handled possibly seventy-five or one hundred cases. Sometimes he would have so many as five or six a week and, by reason of the experience so acquired, he was familiar with the writing, figures, etc., upon papers used by book-makers, and was able to explain and interpret the meaning of them.

The grounds of objection to the above testimony were, first, that such papers and articles were not admissible in evidence because they were illegally obtained by search without lawful warrant, and, second, because the officer making the arrest and seizing the papers and memoranda was al-

lowed to explain to the jury their character and the use made of them by the traverser in the commission of the offense.

The paraphernalia admitted in evidence, subject to the first objection, if illegally obtained, as claimed, which we do not decide, were properly admitted under the established law of this state, at the time of the commission of the offense and the trial of the case. *Lawrence v. State,* 103 Md. 17; *Meisinger v. State,* 155 Md. 195; *Richardson v. State,* 141 Atl. 538.

The second objection, like the first, cannot, we think, be sustained. It is shown by the evidence that the meaning of the figures, words, etc., appearing upon the papers and memoranda admitted in evidence, and used by Nolan in the commission of the offense of which he was convicted, were altogether of a technical character and their meaning known only to those familiar with the methods of book-making, and, therefore, it was right and proper that Koch, an expert in matters of book-making, should be allowed to explain their meaning. This was necessary in order to properly place such evidence before the jury for its consideration. *Aetna Indem. Co. v. Waters,* 110 Md. 692; *Williams v. Woods,* 16 Md. 251; *Cecil Bank v. Farmers' Bank,* 22 Md. 155; *Roberts v. Bonaparte,* 73 Md. 199; *Leftwitch v. Royal Ins. Co.,* 91 Md. 612; *Needy v. Middlekauff,* 102 Md. 183; 16 C. J. 746; *Douglass v. State,* 18 Ind. 289; *Badart v. Foulon,* 80 Md. 589.

In the last mentioned case this court in its opinion quoted with approval from the opinion of Baron Parke in *Share v. Wilson,* 9 Cl. & Fin. 355, the following statement: "In the first place there is no doubt that not only where the language of the instrument is such as the court does not understand, it is competent to receive evidence of the proper meaning of that language as when it was written in a foreign tongue; but it is also competent where technical words or peculiar terms, or indeed any expressions are used which at the time the instrument was written had acquired an appropriate meaning, either generally or by local usage or amongst particular classes."

In *Douglas v. State, supra,* in which the defendant, as in this case, was charged with unlawfully keeping a place in which bets were registered and recorded in violation of a statute of Indiana, certain slips of paper, on which were certain words and figures, were admitted in evidence, and witnesses were allowed to explain the meaning of those words and figures. On appeal, the court, in sustaining the lower court, said: "It appears that these slips were a part of the devices for the keeping of which appellant was indicted * * * The object of the testimony was to explain their use, and * * * it was clearly proper to have oral testimony as to their use and meaning."

The rulings of the court, in admitting the evidence above discussed, embraced exceptions 2 to 32, inclusive, leaving exceptions 33 and 34 to be passed upon.

Exception 33 was to the refusal of the court to allow the counsel for defendant to argue to the jury that section 247 of article 27 had been repealed by article 78B of the Code. As this question had been raised by the demurrer to the indictment and decided adversely to the defendant's contention, there can be no question as to the correctness of the rulings of the court on this exception. *Keller v. State,* 151 Md. 87. And there is no greater merit in exception 34, in which the court refused to allow defendant's counsel, in his address to the jury, to argue in effect the question of the admissibility of evidence obtained by search and seizure without warrant.

As we find no error in any of the rulings of the court, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*