# WILSON *v.* STATE

[No. 266, September Term, 1964.]

246

*Decided June 22, 1965.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, SYBERT and BARNES, JJ.

*John T. Bell,* with whom were *Bell & Bell* and *Charles W. Bell* on the brief, for appellant.

*Fred Oken, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Leonard T. Kardy* and *Charles W. Foster, State's Attorney* and *Assistant State's Attorney,* respectively, *for Montgomery County,* on the brief, for appellee.

SYBERT, J., delivered the opinion of the Court.

The appellant, Franklin Woodrow Wilson, was convicted by a jury in the Circuit Court for Montgomery County of breaking and entering a restaurant with intent to steal goods valued at $100.00 or more, and of the larceny of $1,033.00 therefrom, and was sentenced to concurrent terms in the penitentiary of ten years on the breaking count and fifteen years on the larceny count. In this appeal he contends that he was arrested illegally; that certain items introduced in evidence against him were the products of illegal searches and seizures; and that Judge Pugh, who presided at his trial, committed prejudicial error by refusing to allow him to argue the legality or not of the arrest and of the searches and seizures to the jury, and by failing to give requested instructions on the questions of arrest and search and seizure.

According to the State's evidence, in the early morning of November 30, 1963, the safe of a restaurant in Silver Spring, Maryland, was rifled of approximately $1,500.00 in cash (of which $1,033.00 belonged to the owner of the restaurant). The plunder included $80.00 in quarters, dimes, nickels and pen-

nies in rolls, and $40.00 in loose half-dollars and pennies. Entrance to the restaurant was gained by prying open a side door. The safe was opened by knocking off the combination dial and punching in the lock mechanism. Detective Kennedy, the investigating officer, testified that this method of opening a safe resembled that used in an attempted safe burglary at another location two weeks earlier. He stated that although no one was apprehended in the prior case he was told by an informer that the appellant had been involved, and that since he had stopped the appellant for a traffic violation a few days prior to the restaurant burglary, he knew where he lived. The officer went to Wilson's rooming house at 11:00 o'clock on the morning of the burglary, without a warrant, to question him. Upon his arrival the appellant was awakened by his landlady. The officer testified that after identifying himself to Wilson he asked him whether he would accompany him to the Silver Spring Detective Bureau to discuss something with him and that Wilson agreed. The officer said Wilson "was allowed to drive his own car, and I followed him * * *."

On the five mile trip to Silver Spring Detective Kennedy stopped at a gasoline station to make a telephone call and the appellant got out of his car to obtain a package of cigarettes. The officer said he could see Wilson through the window at all times. Wilson then followed the officer's car to the police station. On arrival both vehicles were left on the parking lot and the two men went to the second floor of the station where Wilson was questioned by Detective Kennedy in regard to the restaurant burglary for approximately forty-five minutes. Lieutenant Treadwell was present during part of the interrogation. Wilson admitted that he and some friends had had dinner at the restaurant on the previous night. The officer stated that after Wilson had said no one other than himself had driven his car, he asked the appellant whether he could look in the vehicle and Wilson said "all right", proffering the key. However, the officer declined to take the key and instead asked the appellant to accompany him to the car, which he did. Kennedy then searched the inside of the vehicle, discovering a quantity of pennies (later found to amount to $6.20) and three cotton gloves, but nothing was seized.

The detective then asked Wilson whether he could look in the car trunk. Appellant said yes, but that the key was at his home. The officer offered to drive him home and Wilson accepted. Kennedy said that at Wilson's invitation he went into the house when the latter obtained the key. Upon their return to Silver Spring the appellant opened the trunk of his car himself, whereupon the officer observed inside two wrecking bars, two cold chisels, a small sledge hammer, a metal punch and some loose change wrapped in a Turkish towel. The officer testified that the head of the hammer was painted blue and that the battered combination dial of the restaurant safe had blue "stains" on it. Likewise, he said a later test showed that white paint on one of the tools matched the white paint on the door of the restaurant. The officer further testified the appellant had told him earlier that the only things in his trunk were auto tools and some half-dollars he had been saving and that upon discovery of the implements mentioned Wilson denied any knowledge of them. The tools and the towel and its contents were seized by the officer. The towel was taken upstairs and the loose coins therein were counted and found to consist of half-dollars, quarters, dimes, nickels and pennies totaling approximately $64.00. The officer thereupon obtained an arrest warrant which was served on the appellant. The latter at the request of the policeman then emptied his pockets of the following: $431.00 in paper money, rolled coins consisting of $30.00 in quarters, $25.00 in dimes and $8.00 in nickels, and some loose change, altogether totaling $499.65. The pennies in the front portion of the car were then seized. According to the police officer the appellant told him that he had been saving the coins. The tools and money taken from the car, and the money taken from the appellant's person, were admitted in evidence over his objections.

Throughout his testimony Detective Kennedy denied that Wilson was under arrest at any time prior to the execution of the arrest warrant. On cross examination he stated that if Wilson had refused to go to the police station voluntarily, or bring his trunk key to the station, he would not have been forced to do so and the matter would have been dropped.

During Detective Kennedy's testimony, the appellant moved

to "quash the arrest" and to suppress the evidence admitted over his objections upon the grounds that his arrest was illegal and that the disputed evidence stemmed therefrom. Upon completion of the officer's testimony the jury was excused and the appellant took the witness stand for the limited purpose of testifying in support of the motions. While he did not deny the various occurrences mentioned by the officer, he claimed that although he was never physically forced to comply with the officer's several requests, he did not of his own free will comply but instead thought he was under arrest and merely submitted to police commands. In support of this contention he testified that when the officer first came to his rooming house and had him awakened, the officer "showed me his badge and told me that he wanted to talk to me in Silver Spring. I felt I had to go with him." He said the detective told him to follow him to the police station. When the stop was made so that the officer could make a telephone call, Wilson said, he informed the officer he would like to buy some cigarettes and was told, "O.K., make sure I can keep an eye on you." According to Wilson, during the forty-five minutes of questioning at the police station Lieutenant Treadwell came into the room and said to him: "What did you do it for? Come on, say something. What did you do it for?" (Wilson never admitted any complicity in the restaurant burglary.) And in regard to the search of the trunk of his car he stated that the officer ordered him to open it and, when informed that Wilson did not have a key, asked him, "Would you like to get one or would you like for me to get a search warrant and break your trunk open?" Then, according to Wilson, when he went to his room to get the key the officer followed him in, uninvited. The appellant further testified that upon their return to his car the officer said "O.K., now let's see your trunk", and although he unlocked the trunk with the key, the officer raised the trunk lid. Wilson explained his possession of the money found on his person and in his car by stating that he was saving coins, and that he had won substantial sums of money at race tracks and at cards.

Judge Pugh denied the appellant's motions, basing his decision on findings that the appellant was not arrested until the

arrest warrant was executed and that the appellant had consented to the searches and seizures made before the arrest.

At the conclusion of the State's case, the appellant moved for a judgment of acquittal, which was denied. He then took the stand and repeated before the jury his testimony that he had not acted of his own free will, but thought he was under arrest and only submitted to police authority, when he had accompanied Detective Kennedy to the police station, submitted to questioning and inspection of the inside of his car, obtained the trunk key, and unlocked the trunk for the officer. He denied that he had consented to any of the searches and seizures. In addition, he denied participation in the burglary and ownership of the tools and said he had no knowledge of how they got into the trunk. He repeated his motion for a judgment of acquittal at the end of the whole case, and it was again denied.

Neither the appellant nor the State submitted written requests for instructions, but the appellant, out of the presence of the jury, orally asked for an instruction "on arrest and search and seizure", without amplifying the request at that time, although he had, just previously, advanced as one of the reasons for his motion for a judgment of acquittal, "the fact the evidence that is in — and circumstantial — is, in my opinion, the result of an illegal arrest, an illegal search, and/or an illegal search, and therefore is in itself inadmissible." Judge Pugh stated that he had ruled as a matter of law that the arrest was lawful, and that he would give the usual instructions to the jury on burden of proof, reasonable doubt and presumption of innocence. The appellant asked whether he would be permitted to argue to the jury on the legality of the arrest, and Judge Pugh replied that he could not do so, and that it was a matter of law which he could argue upon appeal in the event of a conviction, adding, "I would think the record amply protects you on the legality of the arrest."

After charging the jury in the manner in which he had said he would, and without any instruction as to the law of arrest or of search and seizure, Judge Pugh asked counsel whether there was anything further, and both sides answered in the negative. No exceptions to the charge were taken.

The appellant argued below, and argues here, that he was

arrested before the issuance of the arrest warrant—either when the officer came to his room and in effect ordered him (as he claims) to accompany him to the police station, or at the time he was interrogated by the officer—and that such arrest was unlawful because it was not based on probable cause, but on mere suspicion. Thus, he says, the searches and seizures were the direct consequence of an illegal arrest and the incriminating evidence seized was inadmissible against him, citing *Dailey v. State,* 234 Md. 325, 199 A. 2d 211 (1964), and *Hall v. Warden,* 313 F. 2d 483 (4th Cir. 1963). On the other hand, the State takes the position that Detective Kennedy's positive testimony to the effect that the appellant freely and voluntarily consented to the searches and seizures renders the question of the legality *vel non* of his arrest immaterial, citing *Rome and Modo v. State,* 236 Md. 583, 204 A. 2d 674 (1964), and *Carter and Gray v. State,* 236 Md. 450, 204 A. 2d 322 (1964).

The case of *Hubbard v. State,* 195 Md. 103, 72 A. 2d 733 (1950), settles all doubts as to the respective functions of the court and jury in cases where there is a conflict of evidence as to whether incriminating tangible evidence was seized as the result of an illegal search, or with the consent of the accused. We held that the question of admissibility is for the court alone, but that it is ultimately for the jury to determine whether or not a disputed waiver of the right not to be searched was voluntary, stating (at p. 107 of 195 Md.):

> "In a case like this, where the traverser testifies that the search was made over her objection, and the police officers testify that she permitted them to make the search, whether the fruits of the search should go to the jury is in the first instance a matter for the court. If the court is of the opinion that the accused freely and voluntarily consented to the search, and there was no coercion or fear brought to bear upon the traverser by the police, the matter should be submitted to the jury, and it is then for the jury to say, on all the facts, whether the traverser waived her right she might have to object to the search."

This statement was quoted with approval in *Payne v. State,* 207 Md. 51, 54-55, 113 A. 2d 93 (1955), another search and seizure case. *Hubbard* simply applied to disputed searches and seizures the same rule which has been followed for many years in cases in which the voluntariness of a confession is questioned. See *Linkins v. State,* 202 Md. 212, 96 A. 2d 246 (1953), in which the earlier cases are reviewed.

Judge Pugh had concluded, in passing on the admissibility of the seized evidence out of the presence of the jury, that there was no illegal arrest which had constrained the will of the accused to submit to police authority, and that he had voluntarily consented to the searches and seizures, but these were matters for ultimate determination by the jury. While the testimony concerning the circumstances surrounding the detention of the appellant and the searches and seizures was repeated before the jury, it is unclear from the transcript whether the jury understood they were to decide the voluntariness *vel non* of the apparent acquiescence to the searches, particularly in view of the lack of instructions on the point and the court's refusal to permit defense counsel to argue it.

While the court is not obliged to give instructions of its own motion, Maryland Rule 756 b provides that "[t]he court may and at the request of any party shall, give such advisory instructions to the jury as may state the applicable law * * *", and further requires that when instructions are given the court must inform the jury that they are the judges of the law and that the court's instructions are advisory only. Rule 756 a provides that "* * * the State and any defendant may file with the court written requests that the court instruct the jury as set forth in such requests * * *", and Rule 756 f states that "[i]f a party has an objection to any portion of any instruction given, or to any omission therefrom, or to the failure to give any instruction, he shall before the jury retires to consider its verdict make such objection stating distinctly the portion, or omission, or failure to instruct to which he objects and the ground of his objection. * * *".

Here, the appellant's request for instructions was not in writing, and was not specific as to what portion or facet of the law of arrest and of search and seizure he desired the court

to cover in an instruction to the jury. Moreover, he made no objection to the omission from the charge as given of any reference to the law of arrest and of search and seizure. While undoubtedly, in view of the conflict in the testimony and the increasingly complex nature of the law relative to these matters, the jury would have benefited from an advisory instruction thereon, we find it unnecessary, however, to determine whether or not under the circumstances of this case the failure to instruct constituted prejudicial error (cf. *Bennett v. State*, 230 Md. 562, 188 A. 2d 142 (1963), and *Giles v. State*, 229 Md. 370, 183 A. 2d 359 (1962)).

We think the judgment must be reversed because the trial judge erred when he prevented defense counsel from arguing to the jury the questions whether the appellant had voluntarily consented to the searches and seizures, or whether his apparent acquiescence had been induced by an unlawful arrest. Whether these were questions of law or of fact, or a combination of both, they were within the domain of the jury and counsel was entitled to discuss the facts relative thereto and inform the jury of the applicable law.

Under our almost unique constitutional provision—Art. XV, sec. 5, of the Constitution of Maryland—the jury is the judge of the law as well as of the facts in criminal cases. In construing this provision within a year after the adoption of the 1857 Constitution, this Court, in the early case of *Franklin v. State*, 12 Md. 236 (1858), held that defense counsel may not argue the unconstitutionality of a statute to the jury. (This decision was followed in the late case of *Hitchcock v. State*, 213 Md. 273, 131 A. 2d 714 (1957).) However, Chief Judge Le-Grand stated in *Franklin* (at p. 246): "All they [the framers of the Constitution] contended for was, that in a criminal case the jury were not bound to abide by the interpretation of the court of the meaning of a law, but were free to construe and apply it according to their own judgments." And the Court said in *Wheeler v. State*, 42 Md. 563 (1875), at p. 570, that in the trial of criminal cases, under the Constitution "any instruction given by the court, as to the law of the *crime*, is but advisory, and in no manner binding upon the jury, except in regard to questions as to what shall be considered as evidence."

The Court has consistently held that the admissibility of evidence is a matter for the trial court to decide. However, a conflict developed in the cases as to whether or not counsel had the right to argue to the jury contrary to an instruction by the court as to the law of a case. The Court held in *Bell v. State,* 57 Md. 108 (1881), and in *Nolan v. State,* 157 Md. 332, 146 Atl. 268 (1929), that the trial court could prevent counsel from making such an argument. On the other hand, the Court ruled to the contrary in the later case of *Vogel v. State,* 163 Md. 267, 162 Atl. 705 (1932). After reviewing the *Bell* and *Nolan* cases, and many others, the Court said (at pp. 276-277 of 163 Md.) :

> "* * * It is consistent with the right of the jury to exercise their independent judgment as to the law, in a criminal case, that they should be informed of legal theories of the prosecution or defense which may be at variance with the court's advisory instruction. * * * If no suggestion can be made to them as to a different interpretation of the law, which may be the only defense, the right assured to the jury to disregard the court's instruction and form an independent judgment might have no real opportunity for its exercise. * * * The effect of the court's action in submitting its advisory instruction before the argument to the jury, and then refusing to permit counsel for the defendant to argue for a different interpretation of the law, was to prevent the presentation of the legal theory which was the ground of defense."

In *Wilkerson v. State,* 171 Md. 287, 188 Atl. 813 (1937), the Court arrived at the same conclusion as in *Vogel,* although it did not cite that case. In *Wilkerson,* counsel in argument told the jury that there was no presumption of guilt because the defendant did not take the stand. The State's Attorney objected and the court in sustaining the objection told counsel that his comment to the jury was improper. The Court of Appeals in reversing stated (at p. 290 of 171 Md.) :

> "Since, therefore, by constitutional provision the jurors are made the judges of law as well as of fact, it

is difficult to understand how they are to know the law in any particular case if counsel are to be denied the privilege of stating it to them, for the court will take judicial knowledge of the fact that most jurors are laymen, and therefore do not possess knowledge of the law. In the present case, it is undisputed that traverser was correctly stating a law which the jury should have observed in arriving at a verdict. We feel he was well within his rights, and that the action of the court in the presence and hearing of the jurors not only caused them to ignore the statement of the law which counsel had made, but effectively prevented him from making any other statement to them concerning the law."

In *Slansky v. State,* 192 Md. 94, 63 A. 2d 599 (1949), the Court held that Art. XV, sec. 5, of the Maryland Constitution did not conflict with the Fourteenth Amendment to the Constitution of the United States, which involved a constitutional question as in *Franklin, supra.* However, in considering sec. 5, the Court cited *Bell v. State, supra,* for the proposition that "When an advisory instruction has been given, the judge may prevent counsel from arguing contrary to the instruction." (at p. 107 of 192 Md.)

Probably because of the conflict in the cases, this Court as of January 1, 1950, adopted Rule 6(e) (later Rule 739 e and now Rule 756 e), which expressly provides that in criminal cases "[t]he giving of such [advisory] instructions prior to the argument of counsel shall not preclude counsel from arguing to the contrary." In *Schanker v. State,* 208 Md. 15, at p. 21, 116 A. 2d 363, decided in 1955, Chief Judge Brune, for the Court, observed: "Under our system of jury trials in criminal cases, differences between the court and counsel with regard to the law applicable to the case not only may develop before the jury, but are to be left to the jury for determination," and cited Rule 6(e) in support. He noted that the Rule "involves at least a reversal in part of a rule recognized long before the adoption of the Criminal Rules of Practice and Procedure". We think the holdings in *Bell* and *Nolan,* both *supra,* and the passage quoted above from *Slansky, supra,* to the effect that when

an advisory instruction has been given the jury in a criminal case, the judge may prevent counsel from arguing contrary to the instruction, have been superseded by the Rule. However, as Judge Brune pointed out (at p. 22 of 208 Md.) the trial judge may express dissent from counsel's statements as to the law in the course of a criminal trial.

This Court has stated that even though an advisory instruction in a criminal case is not binding on the jury, yet when no objection is made to the instruction given by the judge as to the legal effect of the evidence admitted, the instruction becomes the law of the case. *Slansky v. State, supra* (at p. 107 of 192 Md.) ; *Vogel v. State, supra* (at p. 272 of 163 Md.) ; *Bell v. State, supra* (at p. 120 of 57 Md.). However, we think that in the present case it would be extending the rule too far to say that because of the trial judge's refusal to instruct at all as to the law of arrest and of search and seizure, defense counsel was precluded from arguing that law. Absent instruction and counsel's argument, this jury was "left in the dark" as to the law. *Wilkerson v. State, supra.*

Counsel for the State calls attention to the fact that defense counsel in the case before us only requested permission to argue the legality of the arrest to the jury, but we think it is clear that even in the absence of any request he was entitled to argue the voluntariness of the apparent consent to the searches, as well. Thus the denial of counsel's right to state the applicable law to the jury was plainly prejudicial.

Because the case must be retried, we have neither expressed nor intended any intimation of our views as to the legality of the arrest of the appellant or as to whether or not his apparent consent to the searches and seizures was free and voluntary. We are not suggesting that the trial court erred in ruling that the tangible evidence was admissible.

> *Judgment reversed, and case remanded for a new trial; costs to be paid by Montgomery County.*