## L. C. LEWIS *v.* STATE OF MARYLAND

[No. 41, September Term, 1967.]

*Decided January 5, 1968.*

680

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Nelson R. Kerr, Jr.,* for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel Green, State's Attorney for Baltimore County,* and *John G. Hennegan, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

The appellant, L. C. Lewis, was found guilty of armed robbery on December 21, 1966, by a jury in the Circuit Court for Baltimore County. He was sentenced to a term of not more than five years in the Maryland Correctional Institution for Men. He contends on this appeal from that judgment that the lower court erred (a) in admitting evidence seized without a search warrant, (b) in refusing to instruct the jury that it was the judge of the facts only and not of the law, (c) in refusing to instruct counsel not to argue questions of law to the jury and in refusing to give its instructions after argument of counsel, rather than before, and (d) in requiring defense counsel to renew objections before the jury when such objections to the introduction of real evidence had previously been over-ruled.

On December 21, 1965, at approximately 2:30 a.m., Stanley Zalenski was robbed of $454.00 in front of his home. After the robber had fled in a car, Zalenski called the Baltimore County Police, and Officer Wilmer Ewing was directed to the scene. Ewing received a description of the assailant from Zalenski which he broadcast on his police radio, as follows:

> "The description of the subject wanted was a white male, twenty-three to twenty-five years of age, five foot nine to five foot ten inches, one hundred fifty to

one hundred sixty pounds. He was wearing a dark topcoat."

In the meantime, Officers McCumbie and Hauf, cruising in their radio car about three or four miles from the scene of the robbery, accosted two white men, later identified as the appellant and Donald Welton, parked illegally in a 1965 Mustang. This information, broadcast over the police radio, was overheard by Officer Ewing who recalled having seen a similar automobile approximately one block from the robbery scene about five or ten minutes prior to receiving the call to go to the Zalenski home. Ewing made inquiry over his radio as to the color of the Mustang, and upon being advised that it was light green, he requested that the two subjects be held, as he had cause to believe they were involved in the robbery.

After obtaining drivers' licenses from the occupants of the Mustang, Officer McCumbie radioed for a warrant check, and upon being erroneously advised that two traffic warrants were outstanding against the appellant, he arrested him and placed him in the police car.

As he was proceeding to the scene where the officers were holding the two suspects, Ewing learned that Welton was one of the men being held. Ewing then recalled that Welton was either related to, or had worked for, the management of Mike's Pizza Shop, with which Zalenski was associated, and he believed that Welton would be acquainted with Zalenski, and would be familiar with the operation of the business. When he arrived at the location of the Mustang, Ewing observed that the appellant fit the description of the robber given him by Zalenski. He thereupon arrested both Welton and the appellant on suspicion of armed robbery. As Welton was being taken from the Mustang to a police car, he passed by a trash container which the police immediately thereafter searched, finding therein a roll of money totalling $100.00. The roll was dry and warm, although it was then snowing. Officer Paul Milton then searched the Mustang wherein he found $3.00 in bills on the floor and a .25 caliber automatic pistol in a compartment under the dashboard. Officer Milton's search began promptly after the appellant and Welton had been arrested by Officer Ewing and as

they were being driven away in police cars from the scene. The items discovered as a result of searching the Mustang were admitted in evidence at the trial as having been seized incident to appellant's arrest.

We find no merit in appellant's contention that the search of the Mustang automobile and seizure of the money and gun therefrom were illegal. We think the arrest of appellant by Officer Ewing was lawful as having been based upon probable cause to believe that a felony had been committed and that appellant had committed it. See *Farrow v. State,* 233 Md. 526; *Lamot v. State,* 2 Md. App. 378. It is, of course, well settled that where circumstances make an arrest without a warrant lawful, it is permissible, as an incident to the arrest, to search the person of the suspect and to take into custody and examine the tangible evidence or instruments of the crime, whether upon his person or within his present or immediate possession, *Mulcahy v. State,* 221 Md. 413, 423, including a motor vehicle which he occupies at the time of the arrest, *Knotts v. State,* 237 Md. 417, *Michaels v. State,* 2 Md. App. 424, *Barton v. State,* 2 Md. App. 52, *Gaudio v. State,* 1 Md. App. 455.

In reliance upon *Preston v. United States,* 376 U. S. 364, appellant argues that the rule authorizing a warrantless search incident to a lawful arrest can only be justified on the basis of the need of the police to seize weapons and other things which might be used to assault an officer or effect an escape, as well as the need to prevent the destruction of evidence of the crime— things which might easily happen where the weapon or evidence is under the immediate control of the arrestee. Since he was in police custody and being transported to police headquarters at the time the search was begun, appellant contends that in no event could the search be deemed incident to his arrest. We think the appellant takes too parochial a view of the doctrine which allows contemporaneous searches incident to lawful arrests. Neither *Preston* nor any other decision of the Supreme Court has ever held that the need to discover hidden weapons and to prevent the destruction of evidence by an arrestee constitute exclusive reasons underlying and justifying the doctrine which permits warrantless searches incident to valid arrests. On the contrary, the reasons cited in *Preston* were not intended to be

exhaustive. See *Crawford v. Bannan,* 336 F. 2d 505 (6th Cir.) ; *People v. Webb,* 424 P. 2d 342 (Calif.) ; *St. Clair v. State,* 1 Md. App. 605 (Footnotes 3 and 4, at page 612). We think the relevant test of the validity of a search and seizure under the Fourth Amendment is whether, under the facts and circumstances of each case, the search was reasonable, *Cooper v. California,* 386 U. S. 58; and that which is reasonable cannot be determined by any fixed formula, *United States v. Rabinowitz,* 339 U. S. 56, or stated in rigid and absolute terms, *Harris v. United States,* 331 U. S. 145.

Hence, in *Crawford v. Bannan, supra,* the United States Court of Appeals for the Sixth Circuit held that a search of the defendant's automobile at the scene of his arrest, made after he had been taken away in a patrol wagon, was valid. The court there recognized that under *Preston* the police, when making a lawful arrest, have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime; and that such right extends to things under the accused's immediate control and, to an extent depending on the circumstances of the case, to the place where he is arrested. The court there held that the search of Crawford's car, as incidental to and contemporaneous with his arrest, was "otherwise reasonable" within the holding in *United States v. Rabinowitz, supra,* which, as the court indicated, was cited as authority in *Preston.* The court stated the basis of its holding at page 507 as follows:

> "* * * We do not consider that the fact that Crawford had left the scene when his automobile was searched prevented such search from being incidental to his arrest."

Similarly, the Supreme Court of California, in *People v. Webb, supra,* held that the search of the defendant's car, both at the time of the arrest and thereafter, when the car had been impounded by police, was incident to the arrest, even though the defendant had been removed from the scene and was no longer in a position to use any hidden weapons or destroy evidence in the car.

In *United States v. Doyle*, 373 F. 2d 875 (2nd Cir.) the search of the defendant's car, made in his presence after he had been arrested and handcuffed and taken into custody, was held valid as "substantially contemporaneous with the arrest." In *United States v. Theriault*, 268 F. Supp. 314 (W. D. Ark.) the search of defendant's truck outside the police station to which defendant had been taken after his arrest was held lawful as "an uninterrupted and continuing action of the police initiated by the lawful arrest of the defendant." 268 F. Supp. at 324. In *Arwine v. Bannan*, 346 F. 2d 458 (6th Cir.) the defendant's car was searched in his presence at a police garage more than three hours after his arrest. The court stated its reasons for upholding the validity of the search on page 470-71, as follows:

> "We are of the view that the arrest and search, in this case, were units of an integrated incident, and, regardless of hairsplitting distinctions of contemporaneity, were incident to the lawful arrest. Under these circumstances, we conclude that the search was not an unreasonable search, and was not unlawful in contravention of the Fourth Amendment; and that the evidence obtained as a result of the search was admissible on appellant's trial."

The search of a defendant's automobile outside of the jail to which he had been taken following his arrest was made some two hours after his arrival there in *Trotter v. Stephens*, 241 F. Supp. 33 (E. D. Ark.). The court found the search valid since the car was obtained "incident to and contemporaneous with [defendant's] arrest and the search of the car two hours later was merely part of one continuous act, * * *." 241 F. Supp., at page 41.

In *Price v. United States*, 348 F. 2d 68 (D. C. Cir.), the search of the defendant's car after it had been impounded in the police parking lot following his arrest and transportation to the police station was upheld. The court there said that the search of the car in the lot was "part of a continuing series of events which included the original arrest and continued uninterruptedly as lawful police investigation and action." 348 F.

2d, at page 70. To the same general effect, see *Rodgers v. United States,* 362 F. 2d 358 (8th Cir.) ; *People v. Robinson,* 402 P. 2d 834 (Calif.) ; *State v. Wilson,* 424 P. 2d 650 (Wash.) ; *State v. McCreary,* 142 N. W. 2d 240 (S. D.) ; *State v. Wood,* 416 P. 2d 729 (Kan.) ; *State v. Putnam,* 133 N. W. 2d 605 (Neb.).

In the present case, we hold that the search of appellant's vehicle without a warrant—begun promptly at the scene of the arrest and at a time when appellant was sitting in a police car situated only three feet from his vehicle — was valid on the ground that it was made incident to and contemporaneous with his lawful arrest. We note further that the object of the search, quite obviously, was to discover evidence connected with a known crime for which appellant had been arrested, and was not exploratory in nature, as was the case in *Preston.*

Appellant next argues that the trial judge required him to object specifically to each item of evidence as it was presented before the jury, even though a preliminary determination had been made by the judge out of the presence of the jury that such evidence was admissible. Appellant contends that he was not allowed to make a continuing objection to the evidence and that in making individual objections to each evidentiary proffer, the jury's attention was prejudicially directed to the existence of such evidence. The record fails to sustain the contention, since it indicates that defense counsel's objections before the jury to the evidence in question was not the result of a ruling by the court requiring such objections, but rather resulted from counsel's desire to positively assure preservation of the issue on appeal under Rule 522 (d) of the Maryland Rules of Procedure. Under these circumstances, there is nothing properly before us to review. Maryland Rule 1085.

Appellant next contends that Article 15, Section 5 of the Maryland Constitution, providing that in criminal cases the jury shall be judges of law as well as of fact, is unconstitutional as in violation of the Fourteenth Amendment to the Federal Constitution and that, consequently, the trial judge erred when he refused to instruct the jury that it was the judge of the facts only, and not the law. We disagree. Both the Court of Appeals of Maryland and the United States Court of Appeals for the

Fourth Circuit, after exhaustive analysis of the Maryland Constitutional provision, have found it not violative of the Federal Constitution. *Slansky v. State*, 192 Md. 94; *Giles v. State*, 229 Md. 370, appeal dismissed, 372 U. S. 767; *Wyley v. Warden*, 372 F. 2d 742 (4th Cir.). It is noteworthy that the Supreme Court, in dismissing the appeal in *Giles*, did so "for want of a substantial federal question." And in *Avey v. State*, 1 Md. App. 178, we likewise held that the provision is not in conflict with the Constitution of the United States.

Finally, the appellant contends that even if Article 15, Section 5, of the Maryland Constitution is valid, nevertheless the trial judge unconstitutionally misapplied that provision when he refused upon request to instruct counsel that no argument could be made against the court's advisory instructions, and since he also denied appellant's request that the court's instructions be given to the jury after the arguments of counsel. We disagree. Rule 756 (e) of the Maryland Rules of Procedure, applicable in criminal cases, provides as follows:

> "The court may give its instructions at any time after the close of the evidence. The giving of such instructions prior to the argument of counsel shall not preclude counsel from arguing to the contrary."

As the court here instructed the jury prior to arguments of counsel, either counsel was free by the express dictates of the Rule to argue law contrary to the substance of the court's instructions. We perceive no federal constitutional violation in such procedure; indeed, appellant cites none, although he seemingly relies upon dicta in *Brady v. Maryland*, 373 U. S. 83, for the proposition that the Supreme Court, in refusing to strike down Article 15, Section 5, of the Maryland Constitution, as being violative of the Fourteenth Amendment, did so under the impression that the Maryland constitutional provision had been interpreted as vesting power in the judge to prevent counsel from arguing law contrary to that given by the court in its instructions to the jury. While we do not so read *Brady*, we do note in *Bell v. State*, 57 Md. 108, and *Nolan v. State*, 157 Md. 332, it was held that the trial court could prevent counsel from arguing law contrary to the court's instructions, although in the

later case of *Vogel v. State,* 163 Md. 267, the court made a contrary ruling. It was undoubtedly because of the conflict in these cases that the substance of what is now Rule 756 (e) was first enacted in 1950, long prior to the Supreme Court's decision in *Brady.* In any event, as heretofore indicated, we find no error, constitutional or otherwise, in the trial court's refusal to instruct counsel that he could not argue contrary to the court's instructions, or in denying appellant's request that the court's instructions be given after argument of counsel. See *Wilson v. State,* 239 Md. 245.

*Judgment affirmed.*