# EVERETT DAVID PRICE *v.* STATE OF MARYLAND

[No. 382, September Term, 1968.]

*Decided June 3, 1969.*

132

The cause was argued before MURPHY, C.J., and MORTON, ORTH, and THOMPSON, JJ.

*Leonard R. Goldstein* for appellant.

*Henry J. Frankel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Benjamin R. Wolman, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

On 16 February 1968 Everett David Price was found guilty by a jury in the Circuit Court for Prince George's County under the 1st count of the indictment, charging that he knowingly used, on 28 October 1967, medicine, drugs, mixture and preparation for the purpose of caus-

ing an abortion as proscribed by Md. Code, Art. 27, § 3 [1] and a five year sentence was imposed to run consecutively with a sentence he was then serving. On 21 February 1968 he filed a motion for a new trial which was denied on 29 February. On 28 March he filed a notice of appeal to this Court, which, by order of 28 May, dismissed the appeal upon motion of the State as not timely filed. On 17 June he petitioned for relief under the U.P.C.P.A. and, after hearing, he was granted leave to file a belated appeal by order of 19 September of the Circuit Court for Prince George's County. The same day he noted the appeal which is now before us and claims that the lower court erred in:

   I denying a motion to suppress evidence;

  II admitting in evidence articles seized; and

 III reversing its grant of a motion for judgment of acquittal as to the second count of the indictment.

## I
### THE DENIAL OF THE MOTION TO SUPPRESS EVIDENCE

Prior to trial the appellant filed a Motion to Suppress Evidence, specifying items seized by a search of his automobile and "all other evidence tangible or intangible, directly obtained or indirectly derived" from such search on the primary ground that the search and seizure warrant, under the authority of which the search was made, was invalid. The motion was denied after hearing. The appellant claims error in the denial for the reason that the application for the warrant did not show probable cause for its issuance. The application was made by John D. Schrock, a detective sergeant of the Montgomery County Police Department. He swore before a committing magistrate of Montgomery County that he had reason to believe that in a described automobile listed to

---

1. The section was repealed by Acts 1968, ch. 470, § 1, effective 1 July 1968. Section 3 of the chapter provides that nothing in the act applies to, or affects the prosecution or penalty for, any event or occurrence prior to 1 July 1968.

Everett David Price, Sr. "is now being concealed certain property, namely briefcase type bag, dark in color; syringe (sic) with red top and tube and container of dark fluid which are in violation of Common Laws of the State of Maryland pertaining to crime of abortion." The facts "tending to establish the grounds for issue of a search warrant" were contained in two affidavits incorporated in the application by reference and attached thereto. The first affidavit was that of Schrock. Stating that Schrock was a detective sergeant of the Montgomery County Police Department it read:

> "I received information from Detective John J. Rossi, known to me as a Detective of the Prince George's County Police, relating to the commission of the crime of abortion in Prince George's County and the location in Montgomrey County of evidence and instruments of the crime. I have further received information in my official capacity that one Everett David Price, Sr., of 4410 Aspen Hill Road, Wheaton, Maryland, was arrested for said crime and is charged in Prince George's County. I have read the affidavits of Det. John J. Rossi and discussed with him the statements there, and on the basis of that affidavit, which I have read, and which is attached, I have made application for a search and seizure warrant."

The affidavit of Rossi read as follows:

> "I, JOHN J. ROSSI, hereby certify that I am a Detective of the Prince George's County Police Department, assigned to the Vice Squad, having been a member of the Police Department for a period of six (6) years, and prior thereto with the Metropolitan Police Department for two (2) years.
> After receiving information that an abortion had been committed upon one Darlyne Stevens,

I proceeded to the premises known as 3513 Toledo Terrace, Apartment H-2, Hyattsville, Prince George's County, Maryland, and upon entry therein observed among other things one bed covered with blood, paper towels covered with blood placed in trash can, green colored property upon the towels, female sanitary napkin covered with blood, and other objects. Thereafter the said Darlyne Stevens stated that she had been aborted by a person identified to her as "Mr. Ed", a white male, with general physical description; said abortion having been committed on October 28th at the said premises. I spoke with one Mrs. Jane Patnode, who resides at 7004 Gregg Street, Apt. 27 K, Seat Pleasant, Maryland, who stated that she had been at the premises of the apartment building, had seen a person of the same description as the "Mr. Ed" leave the premises, place a briefcase type bag in his trunk of his red late model convertible, with white top, then put down top, and drive away, with no other person seen entering or occupying the said vehicle. Mrs. Patnode stated that her observations were at approximately 3:30 P.M. on Saturday, October 28, 1967.

The victim stated that she had observed the person known as "Mr. Ed" take from and later return to a briefcase type bag one red topped syringe, with tube attached, fill same with a fluid; that said tube attached to said syringe was inserted into her vagina and a fluid entered therein and thereafter she commenced aborting a fetus, that said fetus when passed was disposed of by flushing same in the apartment toilet. The said victim, after being shown five (5) or more photographs, stated that the photograph of one Everett David Price, Sr., was the person known to her as "Mr. Ed". Upon investigation by your affiant it was determined that one Everett David

Price, Sr., was found guilty of abortion in the Circuit Court of Prince George's County, Maryland and was presently on probation; that when arrested he stated that he was also known as "Eddie". Another arrest having been made in this case, i.e. concerning the abortion of Darlyne Stevens, to wit, of Philip Petry, included a statement, after the said Petry was duly advised of his rights, that he had made the arrangements for the abortion by contacting a person called "Ed" at a certain telephone number. A check by your affiant of said number showed that it was listed in the name of June Price at 4410 Aspen Hill Road, Rockville, Maryland, also the residence of Everett David Price, Sr., the same person as above described.

A warrant for the arrest of Everett David Price, Sr., was issued by a Justice of the Peace for Prince George's County, Maryland, at 4:30 P.M. on November 2, 1967, and thereafter served upon Everett David Price, Sr., at the aforesaid premises at Aspen Hill Road, Rockville. At that time I requested permission to search the premises, having previously advised the defendant of his constitutional rights. He stated that such a search could be made. I did not observe the aforesaid bag or instruments. I also requested permission to search his red convertible Thunderbird but was denied such permission; and I again asked and was denied same.

Your affiant knows of no other residence of the said Everett David Price, Sr., or place where he could conceal the aforesaid instruments and evidence."

On 2 November 1967 Schrock and Rossi both personally appeared before the committing magistrate who issued the warrant and made oath as to his respective affidavit.

In *Spinelli v. United States,* 89 Sup. Ct. 584, decided 27 January 1969, the opinion of the Court expressly stated,

at 590-591, that it did not retreat from the established propositions that:

1) "only the probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause, *Beck v. Ohio,* 379 U. S. 89, 96, 85 S. Ct. 223, 228, 13 L.Ed.2d 142 (1964) ;"

2) "affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, *McCray v. Illinois,* 386 U. S. 300, 311, 87 S. Ct. 1056, 1062 (1967) ;"

3) "in judging probable cause issuing magistrates are not to be confined by nigardly limitations or by restrictions on the use of their common sense, *United States v. Ventresca,* 380 U. S. 102, 108, 85 S. Ct. 741, 745 (1964) ;"

4) "their determination of probable cause should be paid great deference by reviewing courts, *Jones v. United States,* 362 U. S. 257, 270-271, 80 S. Ct. 725, 735-736 (1960)."

In *Spinelli* an informant's tip had a fundamental place in the warrant application—"without it, probable cause could not be established." p. 588. Although the Court concluded that "the informant's tip—even when corroborated to the extent indicated—was not sufficient to provide the basis for a finding of probable cause," p. 590, it continued:

"This is not to say that the tip was so unsubstantial that it could not properly have counted in the magistrate's determination. Rather it needed some further support. When we look to the other parts of the application, however, we find nothing alleged which would permit the suspicion engendered by the informant's report to ripen into a judgment that a crime was probably being committed."

The Court granted *certiorari* in *Spinelli* "believing it de-

sirable that the principles of *Aguilar* should be further explicated." p. 587. In *Aguilar v. Texas,* 378 U. S. 108, a search warrant had been issued upon an affidavit of police officers who swore only that they had "received information from a credible person and do believe" that narcotics were being illegally stored on the described premises. While recognizing that the constitutional requirement of probable cause can be established by hearsay information, it held the affidavit inadequate for two reasons: (1) the application failed to set forth any of the "underlying circumstances" necessary to enable the magistrate independently to judge of the validity of the informant's conclusion that the narcotics were where he said they were; and (2) the affiant-officers did not attempt to support their claim that their informant was "credible" or his information "reliable." Explicating *Aguilar's* principles in *Spinelli* the Court said that "the informer's report must first be measured against *Augilar's* standards so that its probative value can be assessed." If the tip is found inadequate under *Aguilar,* "the other allegations which corroborate the information contained in the hearsay report should then be considered * * * The magistrate must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration?" Applying those principles to the facts in *Spinelli* the court noted that the affidavit offered no reason in support of the statement that the informant was "reliable." And, it said, p. 589: "Perhaps even more important is the fact that *Aguilar's* other test has not been satisfied. The tip does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation. We are not told how the F.B.I.'s source received his information—it is not alleged that the informant personally observed Spinelli at work or that he had ever placed a bet with him. Moreover, if the informant came by the information indirectly, he did not explain

why his sources were reliable * * * In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail so that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." We think it significant that the Court said that the detail provided by the informant in *Draper v. United States,* 358 U. S. 307, provides a suitable benchmark. In *Draper* the informer did not state the way in which his information was obtained and the reliability of the informer was shown only by the statement of a narcotic agent that the informer had been engaged as a "special employee" of the Bureau of Narcotics for almost six months and from time to time gave information regarding violations of the narcotics laws, for which he was paid small sums of money, and that the agent had always found that the information given to be accurate and reliable. The tip was that Draper had gone to Chicago the day before by train and that he would return to Denver by train with three ounces of heroin on one of two specified mornings. The informer described, with minute particularity, the clothes that Draper would be wearing upon his arrival at the Denver station. The Court concluded that a magistrate, when confronted with such detail, could reasonably infer that the informer had gained his information in a reliable way.[2]

In the instant case, that part of the affidavits of the officers which rested on hearsay came from three informants — Darlyne Stevens, the subject of the abortion, Jane Patnode, who had been in the apartment building where the abortion was performed on the day it was per-

---

2. The Court noted in *Spinelli,* 89 Sup. Ct. 589, note 5: "While *Draper* involved the question whether the police had probable cause for an arrest without a warrant, the analysis required for an answer to this question is basically similar to that demanded of a magistrate when he considers whether a search warrant should issue."

formed, and Philip Petry, who had been arrested with respect to the crime and said he had made the arrangements for the abortion. As to each of them, they had seen or perceived the facts asserted and did not come by the information themselves by hearsay. Coming by the information directly, the reliability of their sources was not in question. Thus there was only the question of the honesty of the informants. The affiant-officers did not expressly state that any of these informants were "credible" or their information "reliable." But we feel that this question can be adequately resolved by a consideration of the allegations detailing the affiant-Rossi's independent investigative efforts. "Once again, *Draper*, provides a relevant comparison. Independent police work in that case corroborated much more than one small detail that had been provided by the informant." 89 S. Ct. 589-590. This corroboration referred to was stated in *Spinelli* to be that "the police, upon greeting the inbound Denver train on the second morning specified by (the informer), saw a man whose dress corresponded precisely to (the informer's) detailed description." The Court said: "It was then apparent that the informant had not been fabricating his report out of the whole cloth; since the report was of the sort which in common experience may be recognized as having been obtained in a reliable way, it was perfectly clear that probable cause had been established." p. 590. There was much more corroboration in the instant case. Affiant-Rossi visited the apartment where he had information an abortion had taken place. His observations on the premises verified his information. Darlyne Stevens told him who had performed the abortion on her — a "Mr. Ed", gave a general description of him and identified him from a group of photographs as Everett David Price, Sr. She said that the materials used in the abortion had been carried into and removed from the apartment by him in a briefcase type bag. Jane Patnode saw the identified man leave the premises and place a briefcase type bag in the trunk of a described automobile. Petry, who had been arrested in con-

nection with the crime, said he had arranged for the abortion by contacting a person called "Ed" at a specified phone number.[3] The affiant ascertained that the phone was listed in the name of June Price at 4410 Aspen Hill Road, Rockville, Md. which was also the residence of Everett David Price, Sr. He also ascertained that Price had been previously convicted of abortion and was on probation. Rossi stated that a warrant for the arrest of Price had been issued and when served at his residence Price gave him permission to search the premises but no evidence was found. Price denied a request to search the described automobile. Rossi asserted that he knew of no other residence of Price or other "place where he could conceal" the evidence. Schrock's affidavit stated that he had received information "in his official capacity" that Price had been arrested for the crime.

We conclude that the informants' information as corroborated to the extent indicated was sufficient to provide a basis for a finding of probable cause. We think that the informants' information was sufficiently supported for when we look to the other parts of the application we find allegations which would permit the suspicion engendered by the informants' information to ripen into a judgment that a crime had probably been committed and that the instruments of that crime were probably in the described automobile. Considering the established propositions expressly affirmed in *Spinelli,* we find that the application met the standards in *Draper,* in *Aguilar* as explicated by *Spinelli,* and in the other decisions of the Supreme Court that give content to the notion of probable cause. In so finding, we believe that *Spinelli* permits the official issuing the warrant, to determine that an informant was "credible" and his information "reliable", even absent an express allegation to that effect by the affiant, where, as here, the facts set forth in the application

---

3. Mr. Justice White, in a concurring opinion in *Spinelli,* said "that if an informer's hearsay comes from one of the actors in the crime in the nature of admission against interest, the affidavit giving this information should be held sufficient." 89 S. Ct. 593.

clearly support such a determination, and the application contains the "underlying circumstances" necessary to enable the official independently to judge the informant's information. The magistrate properly discharged his constitutional duty in issuing the search warrant and we hold it valid. There was no error in the denial of the Motion to Suppress. See *Frey v. State,* 3 Md. App. 38. Compare *Kist v. State,* 4 Md. App. 282.

## II

### THE ADMISSION IN EVIDENCE OF
### THE ARTICLES SEIZED

At the trial on the merits the appellant objected to the admission of the articles seized under the authority of the search warrant on the ground that the warrant was invalid. The trial court overruled the objection observing that it had ruled at a hearing prior to trial, in denying a motion to suppress the challenged evidence, that the search warrant was valid. The appellant now argues that the court erred in that the issue of probable cause for the issuance of the warrant had to be again determined at the trial on the merits upon his objection to the admission of the evidence; otherwise he urges "The State has not met its burden of proving the legality of the search and seizure and the evidence thus obtained must be suppressed."

The contention is fully answered by Md. Rule 729. The Rule is applicable whenever property is claimed in a court to have been obtained by an unlawful search or seizure, § a. After indictment, as was here the case, a motion for suppression shall be filed in the court having criminal trial jurisdiction, § b1. This the appellant did. The motion was filed more than five days prior to the trial date, and was determined before the trial commenced as required by § d1. It was denied and that pretrial ruling was binding at the trial, the trial judge not exercising his discretion to grant a hearing *de novo* on the appellant's renewal of his motion or objection, § g2. There was no error in the admission of the challenged evidence.

We note that under the Rule, the failure to file a pre-trial motion shall not constitute a waiver of a defendant's right to object at the trial to the introduction of such evidence, § c, and that a denial of the pretrial motion shall be preserved on appeal, even though no further objection to the introduction of the evidence is made at trial, §§ f and g2.

We note further that we find it clear under Rule 729 that the admissibility of evidence obtained by search and seizure warrant claimed to be invalid is a matter exclusively for the court. Thus in a jury trial, when the issue is properly raised by objection to or motion to suppress or exclude evidence claimed to have been so unlawfully obtained, and the issue had not been determined prior to trial or the issue is entertained by the trial court upon the grant of a hearing *de novo* after it has been determined prior to trial, the matter shall be determined out of the presence of the jury. § d2. If the evidence is found to have been unlawfully obtained, it shall be excluded. If the evidence is found to have been lawfully obtained, it shall be admitted for the jury's consideration, and no evidence on the issue is required to be presented to the jury. The matter of the admissibility of evidence claimed to have been unlawfully seized by reason of an invalid search and seizure warrant is thus distinguished from the question of the admissibility of a confession, where the question of its voluntariness is first determined by the court and upon being found voluntary and thus admissible, the evidence as to its voluntariness is then submitted to the jury. See *Barnhart v. State,* 5 Md. App. 222. *Mullaney v. State,* 5 Md. App. 248, cited by the appellant, involved a search and seizure incident to a warrantless arrest and is not apposite. While the admissibility of articles obtained by a warrantless arrest must be determined by the trial court on evidence or the matter of the validity of the arrest, out of the presence of the jury, we do not now decide, upon a finding of the court that the articles are admissible, whether the evidence as to probable cause for the arrest must then be submitted to

the jury for its ultimate determination. We do not deem our opinion in *Mullaney*, in which this procedure was followed, to hold that it is required or proper. If not required and improper, Mullaney received more than that to which he was entitled and was not prejudiced. We shall decide the point when it is brought squarely before us and fully briefed and argued.

### III

### *THE JUDGMENT OF ACQUITTAL*

At the close of the evidence offered by the State, out of the presence of the jury, the appellant moved for judgment of acquittal. Immediately after the motion was made, with no opportunity for the State to be heard, the court said:

> "It is denied as to the first count, inasmuch as testimony that there was a liquid mixture inserted in the vagina which resulted in the disorders which were later confirmed to be by a physician, an abortion fact because of the fetus.
> On the second count, I will grant that motion."

The second count charged that the appellant knowingly used an instrument for the purpose of causing a miscarriage and abortion. The Assistant State's Attorney asked to be heard. There followed a lengthy colloquy involving the court, the Assistant State's Attorney and defense counsel as to what the evidence showed as to instruments used, whether they were covered by the statute and whether a conviction under both counts would be proper. The court concluded it was a question of fact. The transcript then reads:

> "MR. CAMUS: (defense counsel) Well, Your Honor, I submit the Court granted the motion for judgment of acquittal, which is acquittal under the law. Once the man is acquitted no further action is taken.
> THE COURT: I haven't.

MR. CAMUS: It is granted on the record.

THE COURT: I told him I would hear him. He wanted to be heard.

MR. WOLMAN: (Assistant State's Attorney) It is done before the State had an opportunity to present his argument.

MR. CAMUS: He is still acquitted of it. It is on the record.

THE COURT: I disagree with that. I didn't think you were seriously pursuing the second count.

MR. CAMUS: He can't be found guilty of both.

THE COURT: No.

MR. WOLMAN: Oh, yes, he certainly can. They are two separate things. That he did use the instruments and that he did cause—

THE COURT: We will see about that one. I will straighten that out. Both of them carry the same penalty, what are you talking about?

MR. CAMUS: He can't be convicted of two crimes.

MR. WOLMAN: He can in one act do two things. These are two separate things.

THE COURT: Without this element he couldn't administer this. If you prosecute under one element you can't prosecute under the other.

MR. WOLMAN: There are two distinct things that can be done.

THE COURT: I will deny your motion.

MR. WOLMAN: As I understand, the Court at this juncture is not instructing the Clerk to enter into the docket of Counts 1 or 2 any judgment of acquittal.

THE COURT: No, I think it was premature on my part. I did it because I didn't think you were seriously pursuing that.

MR. WOLMAN: If we get a break and you look at that thing again—

> THE COURT: I say now, in reflecting, it could possibly be a question of fact.
>
> Give Mr. Camus time to write that down, will you?"

The appellant argues that the instant the court said it granted the motion as to the second count, this was a verdict of acquittal; by thereafter reversing its ruling and denying the motion, he was placed twice in jeopardy. The appellant relies on *Fong Foo v. United States,* 369 U. S. 141, where he asserts, the trial court entered a judgment of acquittal because of the supposed improper conduct of a prosecutor and a supposed lack of credibility in the testimony of a witness for the prosecution. The District Court of Appeals reversed and the Supreme Court held that the guaranty against double jeopardy was violated when the appeal court set aside the judgment of acquittal and directed that the defendants again be tried for the same offense; the trial terminated with the entry of the final judgment of acquittal. We do not think it factually apposite to the instant case. Here there was no final entry of judgment of acquittal. See Md. Rule 755c. The court itself reconsidered its ruling immediately after giving the State an opportunity to be heard. We do not think, in the unusual circumstances here, that the guaranty against double jeopardy was violated. A defendant is entitled to a fair trial, not a perfect trial and we do not feel that the action of the trial court derogated from a fair trial. Nor do we find any prejudice to the appellant; the jury did not convict him under the second count. And we note that the appellant thereafter offered evidence and by so doing withdrew his motion in any event. Md. Rule 755b. We note further that in its charge to the jury the court explained the second count and said that the instrument in the case could only be the tube (by which the mixture and preparation charged in the first count was inserted into Darlyne Stevens). The court said, "But I, in an advisory capacity instruct you that he could not be guilty of both of these

counts, it either has to be one or the other, if found to be guilty." The appellant did not except to the instructions. We find no error requiring reversal as to the third contention.

*Judgment affirmed.*