# JAMES WILLIE CLEVELAND *v.* STATE OF MARYLAND

[No. 124, September Term, 1969.]

*Decided November 25, 1969.*

The cause was argued before MURPHY, C.J., and AN-
DERSON, MORTON, ORTH, and THOMPSON, JJ.

*James F. Garrity* for appellant.

*Robert A. DiCicco, Assistant Attorney General,* with
whom were *Francis B. Burch, Attorney General,* and
*William Parsons Fennell, State's Attorney for Kent
County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

*THE ADMISSION OF EVIDENCE OBTAINED*
*BY A SEARCH AND SEIZURE INCIDENT*
*TO AN ARREST—THE FUNCTIONS*
*OF THE COURT AND JURY.*

In *Price v. State*, 7 Md. App. 131 we held that the admissibility of evidence obtained by a search and seizure warrant claimed to be invalid was a matter exclusively for the court. We said, at 143:

> "Thus in a jury trial, when the issue is properly raised by objection or motion to suppress or exclude evidence claimed to have been so unlawfully obtained, and the issue had not been determined prior to trial or the issue is entertained by the trial court upon the grant of a hearing *de novo* after it has been determined prior to trial, the matter shall be determined out of the presence of the jury. * * * If the evidence is found to have been unlawfully obtained, it shall be excluded. If the evidence is found to have been lawfully obtained, it shall be admitted for the jury's consideration, and no evidence on the issue is required to be presented to the jury."

We also said: "While the admissibility of articles obtained by a warrantless arrest [or by an arrest under authority of an arrest warrant] must be determined by the trial court on evidence of the matter of the validity of the arrest, out of the presence of the jury, we do not now decide, upon a finding of the court that the articles are admissible, whether evidence as to probable cause for the [warrantless] arrest [or evidence as to the validity of the arrest warrant] must then be submitted to the jury for its ultimate determination." at 143-144. We promised to decide the point when it was squarely before us. It is now squarely before us. The judge presiding at the jury trial of the appellant in the Circuit Court

for Kent County, having found, on evidence adduced out of the presence of the jury, that articles obtained by a search and seizure incident to a warrantless arrest were admissible because the arrest was legal, refused to give requested instructions to the jury pertaining to probable cause for the arrest, including an instruction that "if the arrest of the defendant was illegal the articles seized as incident thereto were improperly admitted into evidence and cannot be considered by you."

There are established rules of law and adopted rules of procedure relevant to the issue. The basic rule is that the admission or exclusion of evidence is within the sound discretion of the trial court. *Tomolillo v. State*, 4 Md. App. 711, 716. Although Md. Rule 522, made applicable to criminal causes by Md. Rule 725 f, pertains to objections to the admissibility of evidence generally, Md. Rule 729 relates specifically to the suppression, exclusion, or return of property claimed to have been obtained by an unlawful search or seizure, § a. It prescribes procedures for the challenge of the admission of such property, §§ b and c, the procedure for the determination of the issue upon challenge, § d, and provides for the preservation of the issue on appellate review, §§ e and f, and for the binding effect of a pretrial ruling, § g. We think it clear that Rule 729 applies to *any* evidence obtained by a search or seizure. Thus it applies when the search or seizure is under the authority of search warrant, or as incident to an arrest under an arrest warrant, or as incident to a warrantless arrest, or, when the search or seizure is not under the authority of a warrant or incident to an arrest but is otherwise reasonable. See *Winebrenner v. State*, 6 Md. App. 440, 443; *Hall v. State*, 5 Md. App. 394, note 1 at 396; *St. Clair v. State*, 1 Md. App. 605.[1]

---

1. Section a of Rule 729 reads:
   "This Rule shall be applicable whenever property is claimed in a court to have been obtained by an unlawful search or seizure even though the offense charged or threatened to be charged may not be within the exclusive jurisdiction of a court or even though the search warrant,

The rationale of our holding in *Price v. State, supra,* that the admissibility of evidence obtained by a search and seizure warrant claimed to be invalid was a matter exclusively for the court, was that Rule 729 recognized and adhered to the basic rule of law that the admissibility of evidence was a matter of the trial court's sound discretion. Rule 729 provides that the matter may be determined prior to trial, § d, and if the evidence is ruled admissible, such ruling may be considered by the trial court as binding, § g 2. Whether the matter is determined preliminarily or during trial, the hearing thereon shall be out of the presence of the jury, § d 2. We see nothing in the Rule from which we could conclude that after the court has found that the evidence seized was admissible, the jury has the ultimate determination of whether or not the search or seizure was reasonable. Thus if the property was obtained under a search and seizure warrant, the affidavit on which the warrant is based does not go to the jury; if the property was obtained by a search or seizure incident to an arrest, evidence as to probable cause for the issuance of an arrest warrant or for a warrantless arrest does not go to the

---

pursuant to which the property was seized, may not have been issued by a court."

We do not interpret the phrase "even though the search warrant, pursuant to which the property was seized, may not have been issued by a court" to limit the provisions of the rule to property seized by a search and seizure warrant. The Committee note to the rule explains that it was intended to make clear that the rule is applicable to proceedings in a circuit court or one of the law courts in Baltimore City where property was obtained through a search or seizure authorized by a judge of a circuit court or the Supreme Bench of Baltimore City even though the offense may be within the jurisdiction of a people's court, municipal court, trial magistrate or justice of the peace. Also, the Committee notes, the rule was designed to permit a proceeding in a circuit court or one of the common law courts of Baltimore City to suppress, exclude or obtain return of property seized under a warrant issued by a people's court, municipal court, trial magistrate or justice of the peace. In other sections of the rule "property" is referred to only as that alleged to have been obtained by "an unlawful search or seizure" with no designation, express or implied, that the search or seizure must have been under the authority of a search and seizure warrant. For other provisions with respect to search warrants see Md. Rule 707.

jury; if the property was obtained without a search warrant or an arrest, evidence as to the reasonableness of the search and seizure does not go to the jury.

We have found it is not within the contemplation of Md. Rule 729 that the determination of the admissibility of evidence obtained by a search and seizure is a matter for the jury on the question of whether or not the search and seizure were reasonable. It may appear, at first glance, that the question of the legality of a search or seizure is comparable to the question of the voluntariness of a confession and that since the ultimate determination of the voluntariness of a confession is for the jury, so should the ultimate determination of the legality of a search or seizure. But we noted in *Price*, at 143, that the matter of the admissibility of evidence claimed to have been unlawfully seized is to be distinguished from the question of the admissibility of a confession, where the question of its voluntariness is first determined by the court and upon being found voluntary and thus admissible, the evidence as to its voluntariness is then submitted to the jury. See *Barnhart v. State*, 5 Md. App. 222. This is so because of the fundamental difference between a confession and evidence obtained by a search and seizure. The weight to be given any evidence, be it a confession or otherwise, is for the trier of fact. Even if a confession is ruled by the court to be *prima facie* voluntary and thus admissible, it is the function of the jury whether or not to believe it. *Day v. State*, 196 Md. 384, 399. The voluntariness of the confession is an indispensable factor in the determination of whether or not it is to believed. Its integrity would be seriously affected were it obtained by coercion or threat, or improper inducement or without the assistance of counsel whose presence was not properly waived. Thus, in order for the jury to give weight to a confession, that is to ascertain whether it was true, so as to properly consider it in arriving at the guilt or innocence of the accused, they must have before them the evidence as to its voluntariness. Because the voluntariness of a confession is es-

sential to the jury's function in ascertaining guilt or innocence even when it is properly submitted to them, its voluntariness is a question of fact to be found by the jury beyond a reasonable doubt before they may consider it.[2] *Barnhart v. State, supra,* at 225. In other words the voluntariness of a challenged confession is an essential element of the State's case and must be established by it beyond a reasonable doubt once the confession is shown to be admissible by *prima facie* proof that it was voluntary. On the other hand, the integrity of evidence obtained by a search and seizure is not affected by the reasonableness *vel non* of its seizure. Once the trial court has found it to be admissible (this finding upon proper challenge is reviewable on appeal, Md. Rule 729 f), whether or not it was seized under a valid search warrant, or incident to a valid arrest or by a search and seizure otherwise reasonable, plays no part in the weight to be given it. The reasonableness of the search or seizure by which evidence was obtained is not an essential element in arriving at guilt or innocence; the resolution of the question of reasonableness merely determines whether the evidence shall or shall not be submitted to the jury and once this is determined by the court there is nothing for the jury to consider with regard to its admission.[3] Thus the reasonable doubt standard is not applicable; the rule of probable cause in determining the legality of a search or seizure is, as the term indicates, one of "probability." See *Hall v. State,* 5 Md. App. 394,

---

2. The preliminary decision by the court as to voluntariness, is a mixed question of law and fact. In reaching the preliminary decision the court need not find beyond a reasonable doubt that the confession was voluntary. Its duty is to decide whether the *prima facie* proof was such as to establish voluntariness. *Ralph v. State,* 226 Md. 480, 487.

3. We note, that although evidence need not be positively connected with the accused or the crime committed in order to render it admissible, and it is admissible where there is a probability of such connection, the lack of positive identification does affect its weight, and matters relevant thereto are properly submitted to the jury. *Woodell v. State,* 2 Md. App. 433, 436. But the legality of the seizure of such evidence is not *per se* material to the connection of such evidence with the accused or the crime committed.

396-398; *Gaudio and Bucci v. State,* 1 Md. App. 455, 463-464. In short, the validity of a search or seizure relates only to the admissibility of the evidence obtained thereby and is no more for the determination of the jury than are other matters pertinent to the admission or exclusion of evidence otherwise obtained. Therefore, that the jury judge the law as well as the facts, plays no part, just as it plays no part in the determination of the admission of any other evidence.

We do not reach in this opinion the circumstance in which the question is not *per se* the reasonableness of a search or seizure *vel non* but in which the question is, rather, despite the unreasonableness of the search or seizure, whether it was made with the consent of the accused. An accused may waive the constitutional guarantee against an unreasonable search or seizure; he has the perfect right to consent to a search or seizure even though it may be unreasonable. *Hubbard v. State,* 195 Md. 103, 106. The Court of Appeals in *Hubbard* held that where there was evidence adduced by the accused that the search was made over his objection and evidence adduced by the State was that the accused permitted the police officers to make the search, whether the fruits thereof should go to the jury is in the first instance a matter for the court. "If the court is of the opinion that the accused freely and voluntarily consented to the search, and there was no coercion or fear brought to bear upon the traverser by the police, the matter should be submitted to the jury, and it is then for the jury to say, on all the facts, whether the traverser waived [his] right [he] might have to object to the search." 195 Md. at 107. See also *Payne v. State,* 207 Md. 51, 54-55, and *Wilson v. State,* 239 Md. 245. Thus *Hubbard* applied as to the disputed consent to a search the same rule followed as to the disputed voluntariness of a confession and it may well be that the two issues are comparable. Each in the ultimate is a factual determination whether *the accused* acted freely and voluntarily. But we do not now decide the impact of Rule 729 on the holding in *Hubbard, Payne*

212

and *Wilson* as to the respective functions of the court and jury on the question of a consent to a search. However, in *Wilson* the Court, for the first time, extended the *Hubbard* rule with respect to consent to a search to encompass as well the reasonableness *per se* of a search. It said that *Hubbard* "settled all doubts as to the respective functions of the court and jury in cases where there is a conflict of evidence as to whether incriminating tangible evidence was seized as the result of an illegal search, or with the consent of the accused." at 252. Its precise holding was that defense counsel had the right to argue to the jury not only the apparent consent to the searches, but also the legality of the arrest. At 257. *Wilson* was decided 22 June 1965. Rule 729 was added 23 June 1967, effective 1 Sept. 1967.[4] Therefore, *Wilson* was decided without the benefit of the Rule and we find nothing in the Rule as adopted to indicate that the intention was to conform to the holding in *Wilson* as to the function of the jury with regard to the reasonableness *per se* of a search or seizure. On the contrary, as hereinbefore stated, we believe that the Rule intended that the issue was a matter for the trial court exclusively and that its decision thereon was binding. We find support for our belief in *Mace Produce v. State's Attorney*, 251 Md. 503. The Court said that its mandate that it endeavor to "harmonize" different rules dealing with the same subject matter applies with equal force to the various sections of the same rule. Section g 1 of Rule 729 clearly provides that if a motion for the suppression or exclusion of evidence obtained by a search or seizure is granted prior to trial such evidence "should not be offered in evidence by the State at the trial on the merits in the criminal proceeding." Section g 2 provides that when such motion or petition is denied prior to trial of the criminal case, the pretrial ruling shall be binding at

4. By order of the Court of Appeals of 12 July 1965 Rule 729 as then proposed by the Court's Standing Committee on Rules of Practice and Procedure was referred back to the Committee for further consideration.

the trial unless the trial judge, in the exercise of his discretion grants a hearing *de novo* on the defendant's renewal of his motion or objection.[5] Without question the jury has no function under § g 1 as to whether such evidence is to be admitted when the court grants the motion to suppress or exclude it. To be in harmony with § g 1 the jury would have no function as to whether such evidence is to be admitted when the court denies the motion to suppress or exclude it under § g 2 and we see nothing in § g 2 to indicate to the contrary.

We hold that the admissibility of evidence obtained by any search or seizure claimed to be invalid is a matter exclusively for the trial court. If the evidence is found by the trial court to have been unlawfully obtained, it shall be excluded. In a jury trial, if the evidence is found by the trial court to have been lawfully obtained, it shall be submitted to the jury and no evidence pertaining to the legality of the seizure shall be presented to the jury. The jury considers the evidence so admitted, along with other evidence before them, in arriving at their verdict. Thus the trial court here, having found the arrest of the appellant to be legal, did not err in refusing to instruct the jury as requested with regard to the validity of the appellant's arrest and the admissibility of the evidence seized incident thereto.

---

5. Section g 2 further provides that the pretrial ruling denying the motion or petition to suppress, exclude or return property seized, shall in any event be reviewable on appeal to the appropriate appellate court or on a hearing for a motion for a new trial. In *Mace Produce v. State's Attorney, supra,* the Court pointed out, at 509, that "Rule 729 does preserve for review on appeal from the criminal proceedings, in which the search and seizure is challenged, *any determination* made by the lower court as to the returnability, suppression or exclusion of evidence belonging to the accused taken under the search and seizure warrant. (emphasis supplied) We have found, *supra,* that Rule 729 is not confined to evidence seized under a search and seizure warrant but to *any* evidence obtained by a search or seizure.

We call attention that the Court made clear that "such review comes only on a motion for a new trial or upon an appeal [from a conviction in a criminal case], otherwise it would be premature as an appeal from an interlocutory ruling." See *Harris v. State,* 6 Md. App. **7, 19.**

## THE ARREST

In the instant case there was no pretrial motion to suppress or exclude evidence as authorized by Md. Rule 729 b 1. At the trial all the evidence was taken in the presence of the jury. The State first adduced evidence with respect to the arrest of the appellant. The Sheriff of Kent County testified that about 8:00 P.M. on 9 November 1968 he received a complaint from LeRoy Rex Crosby that the Rock Hall Liquor Store had been held up "by a negro male approximately six feet——." At this point objection was made and sustained on the ground that the witness could "only give the nature of the complaint and not the hearsay evidence." It was elicited from the witness that he obtained a description of the robber, that he alerted two deputy sheriffs and two troopers, giving them the description given him by the victim and that he tried to advise the town officer of Rock Hall by radio of what had happened. What description the Sheriff received and what description he gave the other officers was not revealed.

Corporal Franklin O. Boulter of the Maryland State Police was one of the officers the Sheriff alerted. He said he received a telephone call from the Sheriff about 8:00 P.M. on 9 November at his home in Rock Hall. He received a description of the man who committed the holdup and "started to proceed to the holdup scene." About one-half mile from his home he observed "a colored male walking briskly across the laundromat parking lot which is immediately in front of Boundary Avenue as you enter Route 674 or the old road going into Rock Hall * * * He attracted my attention in that he did fit the description given me by the Sheriff. The man appeared to be approximately five feet eleven, had on a dark jacket, dark pants. He was walking briskly toward the rear of the laundromat in what I consider a furtive manner." Boulter drove into the parking lot, stopped the car in such position that the headlights would shine on the man, "quickly got out of the police car and approached the

man and advised him he was under arrest for an investigation of a holdup." [6] Boulter then "patted" the appellant's pockets, "felt numerous rolls of what felt to be coins. I then ran my hand in his right side pants pocket and came out with a roll of money. I then searched his other pockets and found his pockets to contain a quantity of paper money some of which was in rolls with rubber bands, some loose." He then placed handcuffs on the appellant and put him in the police car. At first Boulter was going to take him to the liquor store to have Crosby identify him but on second thought felt it would be better to have a lineup at a later time and to take him to Chestertown to the State Police office. At the State Police office a more thorough search was made of the appellant's person and coins and paper money and two checks, one made by Lois Wood payable to cash in the amount of $11.32 and the other payable to Kent County Liquor Control Board in the amount of $50.59, were found. The total amount of money seized from the appellant's person was $1084.92. On the way to the office a stocking cap which the appellant had on under his hat was seized and after the search of his person at the office his trousers, jacket and sweater were seized. The articles seized from the person of the appellant were received for identification.

---

6. An arrest warrant was issued on 9 November 1968 by a trial magistrate of Kent County upon information received and oath of Crosby who charged that the appellant assaulted and beat him on that date. The warrant commanded the Sheriff of Kent County "immediately to apprehend" the appellant and "bring him before the trial magistrate." The docket of the trial magistrate's court noted "Cepi 11-9-68." It is clear, however, that the appellant was not arrested under the authority of the warrant, for it was issued after he had been arrested by Boulter and taken to the State Police office. The appellant was arraigned before the magistrate on 12 November, elected a trial by jury and was committed in default of bond. On 3 February 1969 he was presented and indicted by the Grand Jury for Kent County on two charges alleged to have been committed on 9 November 1968. Indictment No. 1539 charged the robbery with a deadly weapon of Crosby as agent of Rock Hall Liquor Store whereby $1208.32 was stolen, and indictment No. 1540 charged the robbery with a deadly weapon of Crosby individually whereby $23 was stolen. Trial on the warrant and both indictments was had before a jury on 21 March 1969. The appellant was convicted of each offense.

Robert Joiner, Chief of Police, Rock Hall Police Department, testified that he received a call from the Sheriff's office by monitor radio on 9 November about 8:00 P.M. "stating that the liquor store in Rock Hall had been robbed. I immediately went to the liquor store and found Mr. Crosby as the clerk of the dispensary. I asked him if the store had been robbed because I didn't believe it because I was parked just across the street at the Acme lot at that particular time and he said, yes it had, and I asked him who had robbed it and he told me a colored man. I asked him how he was dressed and he said he was dressed in dark clothes." At this point the State's Attorney said: "Well now, you really shouldn't testify as to what he said out of the presence of the defendant. You can state the complaint." The record then shows that as a result of a conversation with Crosby, the Chief proceeded in the direction Crosby told him the robber had gone. He described the route he took and said he stopped in a gas station, received certain information from the manager, pulled out on Sharp Street and saw the appellant coming out of a tavern. He approached the appellant and told him he wanted to talk to him. The appellant got in the police car "on his own accord," saying, "Mister, carry me home." The appellant would not talk and the Chief called a CB operator in Rock Hall over the car radio and asked that the Sheriff be notified "that I had a subject in my car that could be the subject we were looking for." The appellant got out of the car. "Corporal Boulter signed on the air that he was in service. I didn't have nothing whatsoever to hold this man for * * * I didn't proceed to try to hold this man whatsoever." He followed the appellant and arrived on the scene of his apprehension just after Boulter placed him under arrest "for investigation * * * for armed robbery." After Boulter left with the appellant the Chief went back to where the appellant had gotten out of the Chief's car. At that place, in a ditch, he found a wallet containing $21.

LeRoy Crosby, the victim of the robbery, 78 years of

age, a temporary employee of the liquor store, testified that at 7:58 P.M. on 9 November "a colored chap" came into the store. "He had a mask down just above his mouth. He could talk without talking through the mask. He had a gun in his right hand and he told me, 'this is a robbery.' He came around the store keeping very close to the wall and came around in back of the counter and as I was counting the money, the drawer was open. So he took the money out of that and then he told me he wanted all of it, wanted what was in the safe. So I said, 'There it is', he said, 'No, you give it to me.' So I gave it to him and he said, 'Give me that, too. I want all of it.' Now that means the hard money. Quarters, nickels, dimes that was packaged." At the direction of the robber, Crosby let him out the back door. "And just as he started going out the door he switched the revolver from one hand to the other, the one that had the bag in it (containing the money) and hit me in the stomach * * * with his fist. And then he didn't bother unlatching the screen door. He just went through, pulled the hook out and ran across the lot." Crosby identified the stocking cap taken from the appellant as one like the robber was wearing but "couldn't identify that as the one." He also identified the wallet found by the Chief of Police as his wallet and said that the robber had stolen it. When stolen it contained $23. It was admitted in evidence. He identified certain wrappers found with the money seized from the appellant as having been around some of the money stolen. The identification was made from the witness' handwriting on the wrappers. He could not identify the appellant as the robber.

The State then offered the articles marked for identification into evidence and defense counsel objected. Asked by the court what was the basis for the objection, counsel requested that he give the basis out of the presence of the jury and the request was granted. For the first time defense counsel made known that there was objection to the admission of the proffered evidence on the ground that the arrest of the appellant was illegal as not

based on probable cause and thus could not support, as incident to the arrest, a search of the appellant and seizure of the articles.[7] Defense counsel submitted to the court a memorandum on the issue he had prepared, and after hearing argument the court overruled the objection and admitted the evidence. In reaching its decision the court found that Boulter had arrested the appellant when he first approached him. It noted that there could be no description of the facial features of the robber since he was wearing a stocking pulled down over his face to his mouth and that there was only "a description of his size, his height and the type of clothes he was wearing." It thought that "we have to give this officer some credit for having acted, not on intuition or indiscriminately which the courts have proscribed, but acting out of their experience. The officer acted very positively and it seems to me that it was sufficient for him to place this man under arrest and, therefore, I think he did have probable cause to believe that this was the man who committed the armed robbery."

The general rule is that a warrantless arrest by a police officer is valid where he has probable cause to believe at the time of the arrest that a felony has been committed and that the person arrested committed it. *Simms v. State*, 4 Md. App. 160, 167. Probable cause exists in this context when the facts and circumstances within the knowledge of the arresting officer, or of which he had reasonably trustworthy information, are sufficient to warrant a reasonably cautious person in believing that a felony had been committed by the person arrested. *Michaels v. State*, 2 Md. App. 424. The rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for

---

7. The procedure followed by the defense was not contrary to the Rules of Procedure. "Nothing contained in this Rule shall require a pretrial petition or motion to suppress, exclude or return property alleged to have been obtained by an unlawful search or seizure, and failure to file a petition or motion shall not constitute a waiver of a defendant's right to object at the trial to the introduction of such evidence." Md. Rule 729c.

such belief than would justify conviction, but more evidence than that which would arouse a mere suspicion. *Terrell v. State*, 3 Md. App. 340. Only the probability, and not a *prima facie* showing, of criminal activity is the standard for probable cause. *Beck v. Ohio*, 379 U. S. 89, 96. And it is settled that the legality of an arrest is measured by the existence of probable cause at the time of the arrest. *Mullaney v. State*, 5 Md. App. 248. We stated in *Simms v. State, supra,* at 167:

> "In assessing the validity of an arrest under the rule the essential ingredient is that probable cause existed within the knowledge of the arresting officer and not that he necessarily construed that knowledge correctly. It is not the belief of the officer that determines the validity of the arrest; it is whether, in the situation in which he found himself, he had probable cause to believe a felony had been committed and that the person arrested committed it."

And see *Boddie and Brooks v. State*, 6 Md. App. 523, 532.

It is clear that Corporal Boulter arrested the appellant immediately upon approaching him on the parking lot. He was not merely approached by the officer and questioned as to his identity and actions as would amount to an accosting. See *David v. State*, 1 Md. App. 666. Nor was there a protective search preceding arrest as authorized by *Terry v. Ohio*, 392, U. S. 1, although we believe that in the circumstances such a protective search before arrest would have been proper. See *Williams v. State*, 7 Md. App. 204. It is also clear that the appellant was there a protective search preceding arrest as au- in evidence were then seized from his person.[8] The evidence showed that the arresting officer had probable cause to believe that a felony had been committed. The

---

8. The search on the scene of the arrest, the seizure of the stocking cap on the way to the State Police office and the search and seizure at the office were all sufficiently contemporaneous to the arrest so as to be incident thereto. See *Watkins v. State*, 7 Md. App. 151.

question is whether the evidence before the trial court was sufficient to show that the arresting officer had probable cause to believe that the appellant committed the felony. This question must be considered in the light of what facts and circumstances, as shown by the evidence, were, at the time of the arrest, within the knowledge of the arresting officer, or of which he had reasonably trustworthy information. Information received by Boulter from the Sheriff would be reasonably trustworthy but other than that there had been a robbery the evidence did not disclose with any specificity what that information was. In fact it did not disclose what description of the robber the victim gave the Sheriff other than he was "a negro male approximately six feet—." The arresting officer testified that his attention was attracted to the appellant because he fit the description given by the Sheriff and he described the man he saw as appearing to be "five feet eleven" and having on "a dark jacket, dark pants." But this conclusion by the officer that the appellant fit the description given by the Sheriff serves no basis for a determination that a reasonably cautious person would be warranted in a belief that the appellant fit the description. We cannot speculate that the officer received a description that the robber was "colored" was five feet eleven inches in height and was wearing a dark jacket and dark pants, even if such description could be deemed to show a probability that the man observed was the robber in the circumstances.[9] We said in *Mullaney v. State,* 5 Md. App. 248 at 253:

> "Evidence to show the basis upon which the arresting officer acted in making an arrest, including the nature and details of information received from other law enforcement officers and/or informants, is not only relevant and admissible on the issue of probable cause, but must affirmatively be shown if the State is to

9. The Chief of Police testified that the victim told him the robber was "a colored man" dressed in dark clothes. But there is nothing to show the victim so described the robber to the Sheriff.

carry its burden of proving the legality of the arrest. See *Hopkins and Terry v. State,* 239 Md. 517; *Veihmeyer v. State,* 3 Md. App. 702; *Scott v. State,* 3 Md. App. 429."

We cannot say that the information shown to have been within the knowledge of the arresting officer established probable cause to believe that the appellant was the robber. Nor is the deficiency in the evidence supplied by facts and circumstances within the personal knowledge of the officer. The time which elapsed between the commission of the robbery and the observation of the appellant by the arresting officer was not established, although it apparently was of relatively short duration. The distance from the scene of the crime and the place where the arresting officer observed the appellant was not stated in the testimony, although apparently it was somewhere within the proximate vicinity. But even so all the arresting officer saw was "a colored male walking briskly" across a parking lot in what he considered a "furtive manner." The actions of the man observed were not further described so as to permit a determination whether a reasonably cautious person would so characterize the appellant's manner. And there was no indication from the testimony of the officer that the appellant was attempting to flee or evade apprehension. See *Gardner and Maple v. State,* 6 Md. App. 483. If the evidence here was sufficient for the officer to have probable cause to believe that the appellant was the robber, it would be sufficient for him to have probable cause to believe that any man be observed about that time in that vicinity walking briskly in what he thought was a furtive manner was the robber. We think that the evidence before the trial court showed at the most that the officer may have had no more than a mere suspicion that the appellant was the robber and this was not enough. "* * * Constitutional proscriptions against unreasonable searches and seizures on the one hand, and the needs of society on the other, require the striking of a balance

not easy to achieve and the drawing of lines not always easy to draw." *Braxton v. State,* 234 Md. 1, 6. But we believe that here the scale dips in favor of the appellant and that his arrest was on the suspicion side of the line which must be drawn between suspicion and probability, although the issue of probable cause for a warrantless arrest must be determined on the facts and circumstances of each case, see *Brown v. State,* 5 Md. App. 367, *Mullaney v. State, supra* and *Randolph v. State,* 1 Md. App. 441.

We hold that the evidence before the trial court was not sufficient for it to find that there was probable cause for the warrantless arrest of the appellant. Therefore the arrest was invalid. As the arrest was invalid, the search of the appellant's person incident to the arrest and the seizure of the evidence found by the search were unreasonable and being unreasonable were illegal. As the evidence was illegally obtained, it was not admissible and the court committed reversible error in admitting it.

There is a need again for us to point out that on the issues of probable cause and the lawfulness of arrest and the admissibility of evidence obtained through any search made in connection with the arrest, information upon which the arresting officer acted, even if hearsay, is directly relevant and is admissible. *Winebrenner v. State, supra,* at 443. Here, as the trial was conducted, the hearsay evidence was properly excluded before the admission of the articles seized from the appellant was challenged. But when objection to the introduction of them was made on the ground of an illegal arrest, it was encumbent upon the State, to produce, out of the jury's presence, evidence with respect to the information upon which the arresting officer acted. Such evidence, theretofore excluded, was then properly admissible and was essential if the State was to meet its burden of proving the legality of the arrest.

We point out that the evidence obtained by a search of the appellant's person which we have found was admitted in error because the search was unreasonable may

be properly admissible on retrial if the State is able, as it well may be, to produce evidence sufficient to meet its burden that there was probable cause for the appellant's arrest.

As our holding requires that the judgments be reversed [10] we do not consider the contentions that the court abused its discretion in refusing to grant a removal and that the sentence imposed was improper.

The appellant *pro se* submitted a supplement to the brief filed by his attorney. We note that there is no provision in this jurisdiction for the filing of an amended or supplemental brief. *Simms v. State, supra,* 174-175.

> *Judgments reversed; case remanded for a new trial.*

10. There being no identification of the appellant as the perpetrator of the crimes, his criminal agency in the robberies could only be established by the inference arising, absent a reasonable explanation of non-culpable possession, from his exclusive possession of the money and other goods stolen in the robbery. *Hernandez v. State,* 7 Md. App. 355. The jury was not obliged to believe his explanation of his possession of the stolen goods. His identity as the robber being thus established, on the evidence clearly showing that it was the robber who committed the assault and battery, the jury could properly find that he was the one who committed the assault and battery. But his identity as the robber was not established at the trial below because it was not shown that he was in possession of the stolen goods, in view of our holding that the goods were inadmissible. Therefore since his identity as the robber was not established, his criminal agency in the assault and battery was not established and the conviction of that offense must also be set aside. Thus it appears that the judgment on the assault and battery must be reversed, if for no other reason, because the evidence was not sufficient to sustain the conviction (a motion for judgment of acquittal was made and denied at the close of all the evidence). Even so a retrial on that offense as well as the robberies may be had because the record before use indicates that probative evidence of guilt can be adduced by the State at another trial. *Gray v. State,* 254 Md. 385.